## ASA T. LAWTON *et als. v.* MARION W. GORDON *et als.*

FILING OF DEED FOR RECORD.—If after a deed is filed for record, but before it is recorded, it is withdrawn from the Recorder's office by the grantee, and kept away from the said office some time and then returned for record—during the time the deed is away from the office the law making the filing of a deed for record notice to subsequent purchasers is suspended.

NOTICE OF PRIOR DEED.—If a person, when about to purchase property, is told by the Recorder that the seller has already given a deed of the property to another person, which was filed for record, but has been taken away before being recorded, this information is sufficient to put him on inquiry; and it is not necessary that such information should come from a person interested in the property in order to constitute notice of an adverse title to the property.

EVIDENCE OF CANCELLATION OF DEED.—Testimony is not admissible to show that a deed was withdrawn from the Recorder's office before it was recorded, for the purpose of being canceled, to revest the title in the grantor.

COSTS IN EJECTMENT.—One who sues to recover possession of an undivided part of real estate, and recovers an undivided part, but a less interest than he sued for, is entitled to full costs, even if the answer concedes his right to the interest recovered, but raises an issue on the question of the ouster from the part recovered.

APPEAL from the District Court, Eleventh Judicial District, Amador County.

The plaintiffs sued to recover possession of an undivided three fifths of the mine, and recovered an undivided one fifth.

The defendants first answered, denying the plaintiffs' right to more than one undivided tenth of the mine. They afterwards filed an amended answer, in which they admitted the plaintiffs' right to an undivided one fifth of the mine, and denied having ousted them from said one fifth. The Court found as a fact that the plaintiffs were entitled to the pos-

session of an undivided one fifth of the mine, and were entitled to judgment for restitution of said one fifth, and gave judgment accordingly, and allowed the plaintiffs their costs up to the time the amended answer was filed, and gave defendants judgment for an undivided two fifths and their costs after the amended answer was filed. The plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellants.

Did Reichling have notice of the prior conveyance to Reed at the time he purchased from Barron? We shall concede that the surrender and cancellation of the Reed deed did not revest the title as between the parties, and that if Reichling did have legal notice of the contents of that deed, that this suit as to the two fifths must fail. Thus having disposed of the " underbrush," we assert two propositions: First—That the information concerning the deed to Reed, coming from strangers to the title, was ineffectual for any purpose. Second—That the facts do not amount to legal notice. Notice, to be binding, must come from a person interested in the property. (3 Sugden on Vendors, 451, 452; *Kern* v. *Swope*, 2 Watts, 78; *Epley* v. *Witherow*, 7 Watts, 167; Dart on Vendors, 402; *Butler* v. *Stevens*, 26 Maine, 484; *Wildgore* v. *Wayland*, Gouldsb. 147; *Tolland* v. *Stanbridge*, 3 Vesey, 478; *Fry* v. *Porter*, 1 Mod. 300; *Bulcher* v. *Stapely*, 1 Vernon, 363; 43 Maine, 519.)

The amended answer conceded our right to one fifth, but this did not take away our right to full costs. (Practice Act, Sec. 495.) *Havens* v. *Dale*, 30 Cal. 547, is an express authority on this point, if any is needed by us.

*H. J. Tilden*, for Respondents.

Counsel says he concedes that if Reichling had legal notice of the contents of that deed, then this suit must fail as to the two fifths. He then lays down the proposition that the

information concerning the deed to Reed coming from strangers to the title, was ineffectual for any purpose. But the rule is not, as broadly stated in the brief of counsel, that "notice, to be binding, must come from a person interested in the property;" for the editor of "Leading Cases in Equity" says: "This doctrine must be understood as applying to notice in its limited sense, as distinguished from knowledge, or such information as is substantially equivalent to knowledge. The true rule, therefore, with regard to the statement of strangers, and of parties in interest, would seem to be that a general statement of the existence of an adverse title, to which no weight would be due when proceeding from a stranger, may be notice when coming from a party interested, and not that distinct and positive information can be disregarded because the person who gives it has no interest in the property to which it relates." (Vol. 2, pp. 157, 158.) "Whatever, therefore, is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as a notice." (Id. 160, and cases cited; *Pendleton* v. *Fay*, 2 Paige, 202; *Hawley* v. *Cramer*, 4 Cowen, 717; *Colton* v. *Seavey*, 22 Cal. 503; *Galland* v. *Jackman*, 26 Cal. 79.)

By the Court, Rhodes, J.:

The material facts upon which the question in this case arises are these: Barron conveyed to Reed the undivided two fifths of a certain quartz lode and mining claim. The deed was filed for record in the Recorder's office on the 6th day of July, 1864, and before it was actually recorded it was taken from the office by a third party, by means of a letter of Reed to the Recorder, and about the twenty-sixth of September it was returned to the Recorder's office, and was recorded on the first or second of October following.

Barron conveyed the same premises to Reichling on the

20th of September, 1864, and the deed was filed for record the same day. Reichling, while negotiating the purchase, went to the Recorder's office to search the records, and was there told by the Deputy Recorder that there was a deed from Barron to Reed for the property, which had been filed for record, but withdrawn before it was recorded. The plaintiffs claim under Reichling, and the defendants under Reed.

The question presented is, whether Reichling purchased with notice of Reed's deed. That deed having been withdrawn by the direction of the grantee from the Recorder's office before it was recorded, and before Reichling purchased, we shall assume, without discussion, that the withdrawal of the deed suspended the operation, as to that deed, of the provision of the twenty-fifth section of the Act concerning conveyances, which declares that the conveyance, from the time it is filed for record in the Recorder's office, shall impart notice of its contents to subsequent purchasers and incumbrancers. The rule, in respect to notice, that whatever is sufficient to direct the attention of a purchaser to the prior rights and equities of third parties, and to enable him to ascertain their nature by inquiry, will operate as notice, is not questioned by counsel, and it has been so often affirmed that a citation of authorities is unnecessary. The purchaser received definite and certain information of the existence of Reed's deed, and this information was worthy of credit, for it came from one who had seen the deed and filed it for record. Would any reasonable man, who was contemplating the purchase of property, after having received that information, doubt as to his duty to pursue the inquiry, in order to ascertain the true condition of the title? He certainly would not hesitate, unless he was laboring under the mistake of law that a recorded deed always took precedence of an unrecorded deed.

The information itself being sufficient in all respects to put the purchaser upon his inquiry, the only remaining question is, whether the information must come from a person

interested in the property? Upon this question the plaintiff cites Leading Cases in Equity, notes to *LeNeve* v. *LeNeve*, in which the writer says: "And this rule has been stated so positively, and in such unqualified terms, under the sanction of names of great authority, as to lead to the inference that notice cannot be binding unless it proceed from a person interested in the property and in the course of a treaty for its purchase." The rule alluded to was, that the notice must be certain; and the rule, it was said, applied emphatically to all statements which do not proceed directly from parties in interest or their agents. "But this doctrine," he continues, "must be understood as applying to notice in its limited sense, as distinguished from knowledge or such information as is substantially equivalent to knowledge. It is evident that, if it be shown that the purchaser knew of the existence of an adverse claim or title, it cannot be necessary to prove notice, and that it must be immaterial whether his knowledge was obtained from the parties interested or from third persons. * * * The true rule, therefore, with regard to the statements of strangers and of parties in interest would seem to be, that the general statement of the existence of an adverse title, to which no weight would be due when proceeding from a stranger, will be notice when coming from the party interested; and not that *distinct and positive* information can be disregarded because the person who gives it has no interest in the property to which it relates. A purchaser cannot go on with safety to complete a purchase after learning the existence of a prior conveyance of the property by the vendor, from a person present as a witness, or even as a bystander, at the execution of the deed by which it was conveyed. And it can hardly be doubted that the same result will follow from the statement of any fact within the knowledge of the party who stated it which shows that the title purchased is subject to the legal or equitable claims of other persons."

The rules in respect to notice to purchasers of adverse titles or claims, other than such as is imparted by the

records, are not founded upon any arbitrary provisions of law, but have their origin in the considerations of prudence and honesty which guide men in their ordinary business transactions. No man, on being told by the Recorder that a certain deed had been filed in his office and that it had been withdrawn, would doubt that the deed existed; and if he was intending to purchase the property, common prudence would dictate to him the necessity of making inquiry of the grantee for the deed, unless he was incorrectly advised that deeds took precedence solely from priority of record.

There was no error in rejecting the evidence to prove that the deed was withdrawn from the Recorder's office to enable it to be canceled, and thereby revest the title in Barron, for title cannot be transferred in that manner. (*Lawton* v. *Gordon*, 34 Cal. 36; *Kelly* v. *Wilson*, 33 Cal. 690; *Bowman* v. *Cudworth*, 31 Cal. 149; *Kearsing* v. *Kilian*, 18 Cal. 493.)

If there was no ouster of the plaintiffs, by the defendants, from the possession of the one undivided fifth of the mine owned by the plaintiffs, they were not entitled to judgment for that interest; but as the record now stands the judgment is conclusive that they were entitled to recover the possession of that interest; and they having recovered possession of that interest, though it was less than that which they claimed, they are entitled, under the authority of *Havens* v. *Dale*, 30 Cal. 547, to the costs of the action.

Cause remanded, with directions to the District Court to award to the plaintiffs such costs as they may be entitled to under sections five hundred and ten and five hundred and eleven of the Practice Act, and remittitur directed to issue forthwith.