[L. A. No. 6183.    In Bank.—September 16, 1921.]

JOHN S. CHAMBERS, as Controller, etc., Respondent, v. JULIA A. HATHAWAY, Respondent and Appellant; UNION TRUST & SAVINGS BANK OF PASADENA, as Administrator, etc., Respondent.

[1] RESIDENCE—QUESTION OF INTENT.—Where a person has two dwellings in different places and resides a part of his time in one place and a part of the time in another alternately, the question which of the two places is his legal residence is almost altogether a question of his intent.

[2] EVIDENCE—REGISTERING AS VOTER—AFFIDAVIT—DECLARATION.—An affidavit made for the purpose of registering as a voter in which affiant states that his residence is at a certain place constitutes a declaration by affiant that at that time his legal residence is in the place indicated, and if unexplained and there is no other evidence of a subsequent change of intent, it would be sufficient to uphold a finding to that effect in a proceeding by the state controller, under the Inheritance Tax Act, for the collection of inheritance tax; but where the evidence shows that after making the affidavit he formed a decided intention to have his residence at his former home in a different state which he used repeatedly as a residence, the union of act and intent as required by the Political Code was sufficiently manifested to establish his residence in the latter place.

[3] APPEAL—PROCEEDING FOR COLLECTION OF INHERITANCE TAX—INHERITANCE TAX ACT.—There is a right to appeal from the decision in a proceeding under the Inheritance Tax Act (Stats. 1913, p. 1078) by the state controller for the determination of liability to taxation under the act.

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Rives, Judge. Reversed.

The facts are stated in the opinion of the court.

Anderson & Anderson and W. W. Wight for Appellant.

John W. Carrigan, Edwin H. Pennock, James L. Atteridge and Robert A. Waring for Respondent.

SHAW, J.—This is a proceeding by the state controller, under the Inheritance Tax Act, for the collection of inheritance tax alleged to be due upon the estate of Frederick N.

Finney, deceased. Julia A. Hathaway is interested in said estate as one of the executors of the will of said decedent under an appointment by the court of probate in the state of Wisconsin, and also as a beneficiary under his will. She alone has appealed from the decree of the court below in favor of the controller.

The complaint alleges that Finney died the owner of notes, bonds, and stocks of the value of one hundred and thirty-eight thousand three hundred dollars, and other property, and that at the time of his death he was a resident of Los Angeles County, California. The answer denied the allegations as to the residence of the decedent and averred that at the time of his death he was a resident of Milwaukee, Wisconsin. Upon this issue the court below decided in favor of the plaintiff. The sole point for consideration upon this appeal is the question whether the decision on that issue is supported by substantial evidence.

The rules for determining the place of residence of a person are thus stated in the Political Code (sec. 52):

"Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:

"1. It is the place where one remains when not called elsewhere for labor or other special temporary purpose, and to which he returns in seasons of repose;

"2. There can only be one residence;

"3. A residence cannot be lost until another is gained . . . ;

"7. The residence can be changed only by the union of act and intent."

Clauses 4, 5, and 6 of the above section have no application to the present case.

[1] Where a person has two dwellings in different places and resides a part of his time in one place and a part of the time in another alternatively, the question which of the two places is his legal residence is almost altogether a question of his intent. "If a party has two residences, that will be esteemed his domicile which he himself selects or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and duties of a citizen." (9 R. C. L. 558; see, also, 19 Corpus Juris, p. 401.)

Upon the trial in the lower court the parties stipulated that Finney was and had been a resident of the state of Wisconsin for many years prior to 1907, and that from that time until his death on March 13, 1916, he passed a part of each year in South Pasadena, California, and a part of each year in Milwaukee and the east, usually spending from October or November to May or June in South Pasadena and the remainder of the time in Milwaukee and the east. The evidence shows that he built a house of fourteen rooms in Milwaukee, Wisconsin, in the year 1884 for his permanent dwelling, and that he continuously maintained that house, having therein three or more servants and all of his furniture and a large number of curios and other articles which he had collected in his numerous travels; that his wife died in 1899, and that thereafter during the remainder of his life his son and family remained in the house with him and took care of the same, but that he paid all the expenses of the establishment; that when in Milwaukee he lived in that house. Upon coming to California in the fall of 1907 he rented a furnished house for the winter and lived in it with a Miss Renold, who had been his housekeeper in Wisconsin. In 1908 he came again and rented a furnished house, which was kept for him by Miss Rénold. During that visit, some time in 1909, she purchased a house, in which she continued to reside thereafter until her death in August, 1915. During his subsequent sojourns in California he lived in her house. In 1912, because of her financial distress, he purchased the house from her and continued to own the same until his death.

It is apparent, therefore, that the facts make a case where a person has two residences, either of which might be his lawful residence, according to his intention, and that the question which one was his lawful residence at the time of his death depends altogether upon his intention regarding them. Under the rule above stated, if his intent was to have his Milwaukee home as his residence, that was the place of residence at his death. If his intent was to make his California house his lawful residence, that was his lawful residence at the time of his death.

We think it must be conceded that upon all the facts in the case his intent, so far as it is to be deduced from his acts and conduct, shows that the Milwaukee residence was

his real home. It was a large establishment; he had built and kept it for a permanent home, he requested his son and wife to live in it and keep it for his use, and he had paid the expenses of maintaining it, even purchasing a farm near the city, on which a tenant lived, who produced milk and vegetables for the family use. His business headquarters were in Milwaukee. He kept safe deposit boxes there in which he stored all his stocks and bonds and other valuable papers. His son or his secretary had access thereto and in his absence they cut off the coupons from the bonds, received the dividends on his stocks, and deposited the same to his bank account in Milwaukee banks. He kept in a California bank only such funds as were required for his expenses while living there. All of his investments were made from Milwaukee and during his absences the business was carried on by his son and secretary. He had a safe deposit box in California, but kept there only such papers as he desired to have with him while he remained away from his main place of business. Under the circumstances of the case the fact that he lived in California during the greater portion of each year is of no substantial significance with respect to the question of his intent. (19 Corpus Juris, p. 403.) The evidence shows that in 1907 he decided to spend the winters in California because the severity of the winters in Wisconsin was detrimental to his health and comfort in his declining years. It was for this reason he came and for this reason that he continued to come yearly thereafter. The fact that he rented houses in California and that he brought and kept there during his stay his two driving horses and that he also had an automobile there was of small significance, considering his wealth and station. He was a man who was given to travel, even in his later years. In the year 1912, being then of the age of eighty, he spent two months traveling in Europe. His last illness occurred while he and his daughter were on a trip to Honolulu, and he died in San Francisco shortly after his return therefrom. All these circumstances go to indicate that his sojourn in California was not in pursuance of a design to change his former residence.

The only direct evidence of his intent on the subject is found in certain declarations shown to have been made by him. That upon which the plaintiff relies, and which is

practically the only one favorable to the plaintiff, was a declaration made by him on May 13, 1912, for the purpose of registering as a voter in South Pasadena, Los Angeles County, California. In that affidavit he stated that his place of residence was in South Pasadena and that he "will have resided in this state one year, and in said county ninety days and in said precinct thirty days next preceding the next ensuing election, and will be an elector of said county at the next succeeding election." The affidavit contains blank forms for noting whether or not the person voted at any election thereafter. The record shows no entries indicating any vote by Finney.

[2] This affidavit constitutes a declaration by Finney that at that time his residence was in South Pasadena, and it must be understood as a declaration that that was his legal residence at that time. If it had remained unexplained by him and there was no other evidence of a subsequent change of intention, this, of course, would be sufficient to uphold the finding of the court. The decedent, however, subsequently explained the reason for this registration and stated that he had decided not to change his residence to California, and the record contains abundant evidence that thereafter he had the fixed intent to be a resident of Milwaukee, Wisconsin. Afterward, in that same year of 1912, during a trip to Europe with an old friend, speaking of his house in Milwaukee, he said that he thought its value would not then exceed forty-five thousand dollars; that Milwaukee was his home, and that during his lifetime he had no disposition to give up that home or dispose of that residence. In December of 1913, his son, John, had written to him, and in reply he wrote from South Pasadena, December 18th, saying: "I did intend taking citizenship here last year but their politics were so bad that I concluded not to do so. . . . I have decided not to change my residence." In March, 1915, he purchased some land in Hennepin County, Minnesota, and he desired to have the title thereto registered under the law of Minnesota. He made an application therefor, duly sworn to in accordance with that law, in which he stated that his residence was No. 34 Prospect Avenue, city of Milwaukee, county of Milwaukee, state of Wisconsin. In October of that year he executed two deeds for his two lots in California, in each of which he recited that his resi-

dence was Milwaukee, Wisconsin. In the summer of 1915 one of his old friends, who at that time lived in California, visited Finney in Milwaukee at his residence there. To him Finney said that he had always kept his house in Milwaukee open and intended to do so as long as he lived. In March, 1915, he executed his last will and therein recited that he was "of the city of Milwaukee in the state of Wisconsin." His will contained provisions for charitable bequests of more than one-third of his estate, and which, as to the excess, would have been void if executed in California, and with respect to the personal property which attends the person would have been ineffective as a disposition thereof if his residence was in California. This will was drawn by an attorney. It was discussed by him with the testator for several weeks before its execution. The attorney stated to him that the bequests made in the will of more than one-third of the estate to eleemosynary institutions would be in conflict with the California law if California was his residence, and thereupon Finney stated positively and repeatedly that he was a resident of Milwaukee and had always maintained his home there, and that his California house was merely for his use in winter. If he had been a resident of California during these years it would have been his duty in giving in his list of property in California to have included therein all his choses in action, and they appear to have been of great value. The evidence shows that this property was taxed regularly every year in Wisconsin and there is no evidence of any taxation thereof in California. As the case was tried in Los Angeles, California, where the records of such taxation were at hand, an inference arises that, since no evidence was given, no record of that character existed. (Code Civ. Proc., sec. 2061, subd. 6.)

This constitutes clear and convincing evidence that whatever his design may have been at the time he registered for voting in California in 1912, he afterward formed a decided intention to retract that decision and to have his residence at his old home in Milwaukee. As he was repeatedly present in that home, using it as a residence after the year 1912, the union of act and intent as required by our Political Code was sufficiently manifested thereby, and his residence in Milwaukee, Wisconsin, was thereby established. There is

no contradiction whatever of this evidence as to the subsequent intent and we deem it to be conclusive on the subject. The court below should have held that at the time of his death he was a resident of the city of Milwaukee, Wisconsin, and not of the state of California.

[3] We think there is no doubt of the right to appeal from the decision in a case of this character. The code authorizes an appeal from a final judgment in any special proceeding. (Code Civ. Proc., sec. 963, subd. 1.) Section 17 of the Inheritance Tax Act (Stats. 1913, p. 1078) authorizes the state controller to institute a special proceeding for the determination of the liability to taxation under the act of any property which has been transferred, in cases where there is no proceeding pending in any court of this state, wherein the taxable character of such property could be determined, and it provides that in such a proceeding there may be a contest by persons interested in the property transferred, and that the court thereupon may · determine whether or not the property is subject to such tax. The act (sec. 1) defines the word "transfer," and as so defined it includes the passing of property by will. The petition of the state controller stated the facts which bring the proceeding within the class thus authorized. The determination of the question whether or not the property is subject to the tax is the principal object to be accomplished by the proceeding. The decree or judgment on that subject is the final judgment sought. The act in effect provides that if such judgment is against the controller, the proceeding is terminated absolutely. If it is in his favor, the act provides that the court must so adjudge. The status of the property as property subject to taxation in this state is thereby finally determined, and section 17 declares that in that event "the same shall be appraised and taxed as in other cases." The subsequent appraisement and collection of the tax are merely the process of enforcement of the judgment so given. In such cases the right of appeal is given by section 963 aforesaid.

The judgment is reversed.

Wilbur, J., Shurtleff, J., Lennon, J., and Angellotti, C. J., concurred.