[L. A. No. 6925.  In Bank.—December 20, 1921.]

In the Matter of the Estate of JOHN NICKSON, Deceased.
MINNIE L. CLAYTON, Appellant, v. H. L. PERRY,
Executor, etc., et al., Respondents.

[1] COMMUNITY PROPERTY—REBUTTAL OF PRESUMPTION—DEGREE OF
PROOF.—While the presumption of community property created by
section 164 of the Civil Code can only be overcome by clear and
satisfactory proof, it is incumbent on the party seeking to rebut
the presumption to do no more than to produce such legal evidence
as, under all the circumstances of the particular case, would ordi-
narily produce conviction to an unprejudiced mind.

[2] ID.—DETERMINATION OF SUFFICIENCY OF EVIDENCE—QUESTION FOR
TRIAL COURT.—Whether or not the evidence offered to overcome
the presumption of community property is clear and convincing is
a question for the trial court, and its determination upon con-
flicting evidence is not open to review on appeal.

[3] ID.—SEPARATE PROPERTY—SUFFICIENCY OF EVIDENCE.—In this pro-
ceeding on final distribution, involving the character of the prop-
erty of an estate, the evidence is held sufficient to overcome the
presumption of community property created by section 164 of the
Civil Code and to sustain the decree that the estate was the
separate property of the deceased.

APPEAL from a decree of final distribution of the Su-
perior Court of Los Angeles County.  Fred H. Taft, Judge.
Affirmed.

The facts are stated in the opinion of the court.

W. C. Shelton for Appellant.

R. S. Parker for Respondents.

RICHARDS, J., *pro tem.*—This appeal is from a decree
of final distribution wherein the trial court, over the objec-
tion of the appellant, distributed the whole of the estate of
the decedent as having been his separate property during his

1.  What is community property, note, 126 Am. St. Rep. 99.

Whether profits accruing during marriage in connection with property
belonging to separate estate of either spouse is community property,
note, 31 L. R. A. (N. S.) 1092.

lifetime. Decedent died in Los Angeles County, California, where he had lived since his removal to California from the state of Iowa in or about the year 1894. Prior to his residence in Iowa he had lived in Wisconsin for a number of years where, in the year 1878, he had married Naomi Nickson, who thereafter lived with him as his wife in Wisconsin, in Iowa, and in California up to the time of his death. Both parties to this marriage had been married before and each had children of such prior marriage, Naomi having two daughters, Lillie Watson and Mrs. Minnie L. Clayton, the latter being the contestant and appellant herein. John Nickson had by his prior marriage five sons, J. W. Nickson, T. J. Nickson, C. D. Nickson, Samuel S. Nickson, and Harry S. Nickson. There were no children of this second marriage. Some time prior to his death John Nickson made his last will in which he declared that the whole of his estate was his separate property, which he therein proceeded to dispose of by making certain specific legacies to certain of his said children and stepchildren. He then devised all of the remainder of his property to his wife, Naomi Nickson, for and during her natural life, with the right to the total net income thereof, and also with right that in the event of such net income not being sufficient for her reasonable care and support, she might use so much of the principal estate as might be necessary for such purpose. Upon her death the remainder of said estate was to be divided among four of his said sons, share and share alike. John Nickson died on December 15, 1917. His said will was offered for probate shortly thereafter, and having been duly admitted to probate the administration of his estate proceeded until the same was ready for distribution in September, 1919, when the executor filed his final account and petition for distribution of said estate, wherein he averred that "the whole of the said estate is separate property of said deceased" and prayed for its distribution according to the terms of the last will of the decedent. In the meantime his widow, Naomi Nickson, had been declared incompetent and her daughter, Mrs. Minnie L. Clayton, had been appointed her guardian; and the latter, on October 8, 1919, appeared on behalf of her said mother and objected to the distribution of said estate as prayed for by said executor, alleging that the whole of the decedent's property and estate was community property of himself and his

said wife, Naomi Nickson, and praying that the same should
be distributed one-half to said Naomi Nickson, as her share
of the community property, and the balance thereof accord-
ing to the terms of said last will of the decedent.   The con-
test thus created came on for hearing before the court and
a large amount of testimony was offered thereon.   At the
conclusion of such hearing the court made its findings in
words and effect "that all of said property and every part
thereof was at his decease the separate property of said
John Nickson, deceased, and that no part thereof was or is
community property of said John Nickson and Naomi Nick-
son."   The court accordingly by its decree distributed the
whole of said property and estate according to the terms of
the last will of said deceased.   From this decree the appel-
lant, Minnie L. Clayton, prosecutes this appeal.

It is an undisputed fact upon this appeal that all of the
property which John Nickson undertook to dispose of by his
last will and testament and of which he died seised he had
acquired by purchase and increment since his arrival in Cali-
fornia, and hence during his marriage with his said wife
Naomi.   This being so, the appellant invokes the presump-
tion created by section 164 of the Civil Code, that all of said
property was community property, and having done so in-
sists that this presumption is one which can only be over-
come by "clear and satisfactory proof," or, as it is some-
times stated in the cases, by "clear and convincing evidence"
that such property was acquired by separate funds and
that the burden of producing such proof lies upon the party
claiming the property as separate; citing in that behalf
*Smith* v. *Smith,* 12 Cal. 216, [76 Am. Dec. 533] ; *Dimmick*
v. *Dimmick,* 95 Cal. 323, [30 Pac. 547].   There can be no
quarrel with a rule as well and old established as the rule
above stated and supported by said authorities; but we are
still required to determine the scope and meaning of the
terms "clear and satisfactory proof" and "clear and con-
vincing evidence" as employed in these cases.   In arriving
at this determination we are directly aided by the decision
of this court in the case of *Freese* v. *Hibernia Sav. etc.
Society,* 139 Cal. 392, [73 Pac. 172], in which the precise
question was discussed and decided as to the force and effect
to be given to both of the foregoing phrases: "Speaking of
expressions of this character," says the court, "some of which

were stronger in terms than any used by this court, Ballinger in his work on Community Property, says (section 167): 'It is not believed, however, that these terms should be considered as going to the length that their general meaning might import. Certainly it is not required that the proof to destroy this presumption should be any more than sufficient to satisfy the mind of court or jury that its weight is enough to cause a reasonable person, under all the circumstances, to believe in its sufficiency, in order to counterbalance the naked presumption that the property was acquired with the funds of the community. The property is merely considered as the property of the community until the contrary is shown by legal proof, and legal proof would seem to be a preponderance of the testimony under all the facts and circumstances of the particular case.' . . . [1] We are of the opinion that it is incumbent on the party seeking to overcome the presumption of community property to do no more than to produce such legal evidence as, under all the circumstances of the particular case, would ordinarily produce conviction to an unprejudiced mind, and that in the face of such evidence the naked presumption, unsupported by any testimony, must fall." In the later case of *Couts* v. *Winston*, 153 Cal. 686, [96 Pac. 357], this court says: [2] "Whether or not the evidence offered . . . is clear and convincing is a question for the trial court. . . . In such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in this court." In the case of *Estate of Pepper*, 158 Cal. 619, [31 L. R. A. (N. S.) 1092, 112 Pac. 62], the language of both of above cases was quoted and approved. In the light of these cases we approach the evidence in the instant case, which may be fairly summarized as follows: John Nickson, prior to the time of his marriage with his second wife, Naomi, in the year 1878, had been the owner of a farm in Wisconsin and also of some mining interests therein, which, together with his personal property consisting of money, cattle, and farming equipment, was variously estimated by several witnesses to be of the value of from ten thousand dollars to fourteen thousand dollars. About three years before his marriage with Naomi, and while his first wife was still living, he began to remove his property interests and effects to the state of Iowa, where he acquired a

farm of about 160 acres, which he stocked with his cattle and
farming machinery brought from Wisconsin. These pos-
sessions were his when he returned to Wisconsin to marry
Naomi, and he was then sufficiently well to do to be loaning
money in the neighborhood of his Iowa home. From time to
time during the twenty years he lived in Iowa after his mar-
riage he added to his farm holdings until they amounted
to about 540 acres in 1894, when he determined to remove
to California, which he did in the month of December of that
year. During the sixteen years of his married life in Iowa
he and his wife Naomi were both hard-working people on the
farm, his wife performing the usual work of a farmer's wife
thereon and both deriving their living from its proceeds.
Whatever increment there was in the acreage or equipment
of his farm during these years came chiefly from its annual
product and the profits arising therefrom. When the resolu-
tion was reached to remove to California John Nickson of-
fered his realty holdings in Iowa for sale and held a public
auction of his personal property, and derived from the sale
of both the sum of about sixteen thousand dollars, which he
transferred to this state and began investing here. Some
question has been raised as to the rights of the wife in this
property prior to its removal to California and under the
laws of the state of Iowa, but we think this question is fairly
set at rest by the decisions of that state holding that the
dower interest of the wife under the statutes of Iowa then
in force was a mere expectancy, dependent on survivorship
to become a vested right. (*Mock* v. *Watson*, 41 Iowa, 241;
*Dougherty* v. *Dougherty*, 69 Iowa, 677, [29 N. W. 778];
*Purcell* v. *Lang*, 97 Iowa, 610, [66 N. W. 887]; *Beach* v.
*Beach*, 160 Iowa, 346, [Ann. Cas. 1915D, 216, 46 L. R. A.
(N. S.) 98, 141 N. W. 921].) Within a short time after his
arrival in California John Nickson began investing in real
estate. He first purchased five acres of land planted to
citrus fruit at Chula Vista, California, upon which he and
his wife lived and where for a brief time they ran a boarding-
house, but whether at a profit or not does not appear. He
also invested in a prune orchard near Tulare, California,
where he and his wife worked for two summers. Some six
years later he bought another tract of land in Whittier for
fourteen hundred dollars on the installment plan, for
which he finally paid. He also from time to time pur-

chased other property, so that at the time of his death he was the owner of real estate in the counties of Orange, Riverside, and Los Angeles of the appraised value of $28,-472.46. During these years of residence in California and of the acquisition of these properties therein John Nickson was an elderly and aging man, with no trade, profession, or business, but worked hard upon the properties he from time to time owned, and showing some considerable degree of shrewdness in making his investments. During these years also his wife Naomi lived and worked with him upon whichever of their properties they resided, but it nowhere appears that any income which could reasonably be credited to these joint labors would have more than sufficed for their mutual support. In the year 1915 John Nickson executed his will which was the subject of probate in this proceeding and in his said will stated that all of his property devised thereby was his separate property and estate. About two years thereafter, and in December, 1917, he undertook to establish the title to his various pieces of real estate in the county of Los Angeles under the Torrens Land Act. In the petition filed by him in that proceeding he alleged himself to be ''the owner of an estate in fee simple as his separate property'' of the real estate described therein. It was also stated that ''Naomi Nickson joins herein as applicant,'' and the affidavit appended to said petition was signed by both John and Naomi Nickson. The decree followed the language of the petition in finding that all of the allegations thereof were true and in decreeing that John Nickson ''is the owner of an estate in fee simple as his separate property in the premises described in said petition.'' We do not undertake to consider or decide herein the validity of the foregoing proceeding or the effect of the decree therein as being *res adjudicata* between the parties hereto, since we think that our conclusions herein may be put upon other grounds.

In addition to the other facts above set forth, there was some further evidence produced tending to show that Naomi Nickson had at one time stated that she herself was the owner of certain separate property at the time of her marriage to John Nickson, which had gone, or was to go, to her daughters, whereas the property belonging to John was to go to his sons exclusively; and that upon various other occasions after the making of his said will she had

stated to various parties that she was satisfied with its terms and with her husband's treatment of her therein and that all of the property was his. On the other hand, there was some evidence that at the time the proceeding under the Torrens Land Act was taken and the foregoing statements were made by her, Naomi Nickson was over eighty years of age and was in a feeble condition of both mind and body. [3] In regard to these matters the evidence is somewhat conflicting, but with respect to the main body of the evidence touching the property, ownership, investments, and accretions of John Nickson before and after his marriage to Naomi Nickson there is practically no conflict in this evidence, and we are of the opinion that it is ample to produce that degree of proof which would suffice to overcome the presumption that the properties acquired by John Nickson after his said marriage were community property, and also to sustain the finding and decree of the probate court that the said property and the whole thereof was his separate property.

The appellant chiefly relies for a reversal upon the case of *Estate of Hill*, 167 Cal. 59, [138 Pac. 690], but an examination of that case shows that the appellant can derive no comfort therefrom, since upon a state of facts in many respects similar to those in the instant case the trial court decided that certain of the property involved therein was the separate property of the husband, which conclusion this court approved upon appeal.

Judgment affirmed.

Shaw, C. J., Waste, J., Lennon, J., Shurtleff, J., and Sloane, J., concurred.