[Civ. No. 8937. First Appellate District, Division One.—September 29, 1933.]

AMY OLSON et al., Plaintiffs and Appellants, v. ELLA H. CORNWELL et al., Defendants and Appellants; CHARLES H. RHOADES et al., Respondents.

420

John Henderson Pelletier and John C. Kleber for Appellants.

Rex Hardy and W. Claire Anspach for Respondents.

THE COURT.—An action by plaintiffs Olson and Caldwell to quiet their alleged title to an undivided interest in a parcel of land in Los Angeles County.

They are daughters of Charles Lyman Cornwell, who died intestate in said county on September 26, 1921. They claim that the land was the community property of decedent and defendant Ella H. Cornwell, their mother, who will be here-

inafter referred to as Mrs. Cornwell; also that defendant California Security Loan Corporation, hereinafter referred to as the loan company, acquired its interest therein with notice of their rights as heirs of decedent and under a certain contract of settlement made with their mother, by which the latter agreed that they should have an interest in the property. After said contract was recorded defendants Rhoades succeeded to the interest of the loan company therein.

The trial court found against plaintiffs' claims, and judgment having been entered accordingly, they have appealed therefrom.

Decedent and Mrs. Cornwell married on November 20, 1872, and came to California in 1882. There were four children of the marriage. The land was purchased on a contract in 1884, and was conveyed by the record owner to Mrs. Cornwell by grant deed dated July 12, 1886, and recorded July 27, 1886. According to the court's findings the conveyance to her was made at decedent's request. The spouses and their children resided thereon until the death of decedent.

Commencing in 1924 Mrs. Cornwell executed several encumbrances upon the property to secure sums borrowed. Among these were several deeds of trust to the Title Guaranty & Trust Company to secure loans made by the loan company. The last was dated August 29, 1927, when Mrs. Cornwell, with her son, Ralph, executed a deed to the title company as trustee to secure a loan of $24,500 from the loan company. Defaults occurred under this deed, and on April 19, 1930, the land was sold by the title company as trustee and purchased by the loan company. In 1930 the loan company's interest therein was acquired by defendants Rhoades.

When the title to the land was secured by Mrs. Cornwell the statute provided that all property of the wife owned by her before marriage, and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, should be her separate property (Civ. Code, sec. 162). The same rule applied to property owned or in like manner acquired by the husband (Civ. Code, sec. 163). Section 164 of the same code provided that "all other

property acquired after marriage by either husband or wife is community property".

In support of their contention that the land was the community property of their parents plaintiffs rely in part upon the disputable presumption that it was of that character (*Alverson* v. *Jones*, 10 Cal. 9 [70 Am. Dec. 689]; *Meyer* v. *Kinzer*, 12 Cal. 247 [73 Am. Dec. 538]; *Estate of Pepper*, 158 Cal. 619 [112 Pac. 62, 31 L. R. A. (N. S.) 1092]). It was, of course, incumbent upon defendants to meet this presumption, and it has been said that the evidence, in order to have this effect, must be clear and convincing. This question, however, was one for the trial court, and its determination is conclusive unless its conclusion is manifestly unsupported (*Estate of Pepper, supra; Couts* v. *Winston*, 153 Cal. 686 [96 Pac. 357]; *Fanning* v. *Green*, 156 Cal. 279 [104 Pac. 308]; *Estate of Nickson*, 187 Cal. 603 [203 Pac. 106]). Defendants adduced evidence showing that in 1907 decedent upon his verified petition was adjudged a voluntary bankrupt. The land in question was not listed in the schedules attached to his petition, which purported to show all his property, both real and personal, nor in the inventory subsequently filed by the trustee. Following this, decedent filed his petition for a discharge, alleging that he had duly surrendered all his property and rights of property, and the petition was granted. No reference to the land appears in either of these proceedings. Decedent's declaration was relevant on the question of his ownership, and competent against those claiming under him (*Lyon* v. *Phillips*, 106 Pa. 57; *Rankin* v. *Busby*, (Tex. Civ. App.) 25 S. W. 678; *Bald* v. *Nuernberger*, 267 Ill. 616 [108 N. E. 724]; *Spotswood* v. *Spotswood*, 4 Cal. App. 711 [89 Pac. 362]; Chamberlayne, The Modern Law of Evidence, sec. 2777). Mrs. Cornwell testified in substance that before coming to California she had saved about $500; that this was her own money, and that a portion of it was paid on the land contract; that subsequent payments were made from money given her by her husband; that when the purchase was made he stated that the property should be hers; that with his consent the deed was taken in her name and that subsequently on several occasions he referred to the land as her property and that he had no interest therein. A son also testified to the same effect.

██ If her testimony was true this was evidence of her husband's intention to give her the property. He had the right so to agree (*Hoeck* v. *Greif*, 142 Cal. 119 [75 Pac. 670]), and he could have made the gift effectual by directing the conveyance to be made to her, as she testified (*Peck* v. *Brummagim*, 31 Cal. 441 [89 Am. Dec. 195]; *Jacks* v. *Torrence*, 83 Cal. 521 [23 Pac. 695]; *Cullen* v. *Bisbee*, 168 Cal. 695 [144 Pac. 968]). She joined with her husband in the execution of certain agreements affecting the property and a mortgage thereon; she also joined with her son in executing the deed of trust mentioned, and permitted a part of the loan secured thereby to be paid to the latter. She also brought a suit to quiet the title thereto against her children, which suit will be hereafter considered in another connection. A letter was written by her after the date of the last deed of trust requesting plaintiffs to join in the execution of a new encumbrance on the property in order to pay off the existing debt. She stated therein that if that were done she would be "willing to make out a paper to give you your part when sold". Plaintiffs claim that these and other circumstances constituted admissions showing that the land was not her separate property. Although the evidence last referred to tends to support plaintiffs' contention, it is not conclusive. It does not necessarily follow from the fact that her husband and son joined in the execution of the instrument mentioned that the land was not originally her separate property, nor does the letter referred to necessarily have that effect. It was written after the execution of the contract of settlement above mentioned, in which it was agreed that each of her daughters should thereafter have a fractional part or interest in the property. The significance and force of such acts and statements are for the jury or the trial court sitting as such to determine (*Smith* v. *Whittier*, 95 Cal. 279 [30 Pac. 529]; *Bush* v. *Barnett*, 96 Cal. 202 [31 Pac. 2]; 10 Cal. Jur., Evidence, sec. 321, p. 1082). ██ As stated by Chamberlayne (The Modern Law of Evidence, sec. 1390), the substantive or procedural law prescribes no predetermined weight for extrajudicial admissions, whether oral or in writing. It leaves the question of weight and the construction of an admission, verbal or written, to the jury, entirely unaffected by specific

rules as to weight. All relevant facts and circumstances are to be considered in order to ascertain the intention of the parties; and the court's conclusion that the presumption mentioned has been overcome will not be disturbed if there be a substantial conflict in the evidence (*Woods* v. *Whitney*, 42 Cal. 358; *Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919]; *Estate of Nickson, supra; Lyon* v. *Lyon*, 70 Cal. App. 607 [233 Pac. 988]). And the same is true where there is no conflict if different inferences might fairly be drawn from the evidence (*MacDermot* v. *Hayes*, 175 Cal. 95 [170 Pac. 616]). We are satisfied that the conclusion of the trial court that the land was the separate property of Mrs. Cornwell is fully supported.

It is also contended that the loan company had notice of plaintiffs' claims both as heirs of their father and under their contract with Mrs. Cornwell. This is based upon the facts that a *lis pendens* was filed in Mrs. Cornwell's suit to quiet title and that the loan company had actual notice of the suit.

██ The suit mentioned was commenced by Mrs. Cornwell against her children on March 2, 1926, and a *lis pendens* was filed on March 4, 1926. The complaint alleged title in her, and that the defendants (including the plaintiffs in the present action) claimed some estate or interest in the property. On June 14, 1926, defendants last mentioned answered, denying Mrs. Cornwell's alleged title and averring that the land was community property and that the interest they claimed therein was by right of inheritance as heirs of their father. They asked no affirmative relief nor did they file a *lis pendens*. However, that filed by Mrs. Cornwell was sufficient notice that they claimed an adverse interest (*Welton* v. *Cook*, 61 Cal. 481; *Imperial Farming Co.* v. *Van Horn*, 107 Cal. App. 717 [290 Pac. 1077]). ██ The effect of a *lis pendens* is to give constructive notice of all facts apparent on the face of the proceedings, and of those facts of which the facts so stated necessarily put a purchaser on inquiry (17 R. C. L., Lis Pendens, sec. 7, p. 1014); and a subsequent purchaser from a party takes subject to any judgment that may be rendered in the action of the pendency of which notice is given (16 Cal. Jur., Lis Pendens, sec. 12, p. 658). ██ While it has been held that the doctrine

extends to a compromise of litigation and a decree entered accordingly (*Turner* v. *Babb*, 60 Mo. 342), according to the decisions, if the action is settled and is abandoned or dismissed the *lis pendens* is terminated, and a person acquiring interests before settlement, abandonment or dismissal does not take such rights *pendente lite* so as to be affected thereby (38 Cor. Jur., Lis Pendens, secs. 65, 67, p. 40; *Bailey* v. *Ford*, 132 Ark. 203 [200 S. W. 797]; *Johnson* v. *Marti*, (Tex. Civ. App.) [214 S. W. 726]; *Wells* v. *Goss*, 110 La. 347 [34 So. 470]).

 No judgment except one of dismissal was entered in the quiet title action, and this was done pursuant to the contract between the parties settling their differences and by which plaintiffs acquired an interest in the land. The trial court in the present case has found that plaintiffs' asserted interest by succession from their father was without foundation, and it appears that their sole interest was that acquired from Mrs. Cornwell under the settlement contract mentioned, following the execution of which the suit was dismissed.

These facts bring the case within the rule above stated, and the rights of the loan corporation were unaffected by the *lis pendens* filed.

However, it is clear from the evidence that both the loan and title companies had actual notice of the pendency of the suit as early as February, 1927; but, according to correspondence between them, the loan company was satisfied to accept a policy of insurance from the title company insuring the loan against any loss growing out of the litigation. The settlement contract was executed on August 8, 1927, but was not recorded until June 29, 1928. The last deed of trust was executed on August 29, 1927, and recorded September 6, 1927. The contract recited that a settlement of all disputes between the parties had been made, and contained the provision that plaintiffs "shall have and from now on are entitled to one-sixth (⅙) part and interest each" in the property. It seems clear from the language of the parties that it was the intention to make a present transfer to plaintiffs of an undivided interest in the property; and where the intent is expressed it is sufficient, whatever may be the inaccuracy of expression or the inaptness of

the words used, and the courts will give the instrument that effect (8 R. C. L., Deeds, sec. 64, p. 937; *Meyers* v. *Farquharson*, 46 Cal. 190; *Brusseau* v. *Hill*, 201 Cal. 225 [256 Pac. 419, 55 A. L. R. 157]; *Leala* v. *Carroll*, 207 Cal. 542 [279 Pac. 443]; *Field* v. *Columbet*, 4 Sawy. 523 [9 Fed. Cas. 12]; *Evenson* v. *Webster*, 3 S. D. 382 [53 N. W. 747, 44 Am. St. Rep. 802]; *Gambril* v. *Rose*, 8 Blackf. (Ind.) 140 [44 Am. Dec. 760]; *Harlowe* v. *Hudgins*, 84 Tex. 107 [19 S. W. 364, 31 Am. St. Rep. 21]).

It has been held that actual notice of the pendency of an action is in many respects more extensive than the doctrine of *lis pendens* (38 Cor. Jur., Lis Pendens, sec. 7, p. 10); and it is the general rule that whatever is sufficient to direct the attention of a purchaser or encumbrancer to the prior rights or equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as a notice of the facts (*Lawton* v. *Gordon*, 37 Cal. 202; *Montgomery* v. *Keppel*, 75 Cal. 128 [19 Pac. 178, 7 Am. St. Rep. 125], *Pellissier* v. *Title Guarantee & Trust Co.*, 208 Cal. 172 [280 Pac. 947]). As the rule is stated by Pomeroy (Eq. Jur., 4th ed., sec. 608), whenever a party has information or knowledge of certain extraneous facts which of themselves do not amount to or tend to show actual notice but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to the discovery of the truth or to a knowledge of the interest, claim or right which really exists, then the party is absolutely charged with constructive notice of such interest, claim or right. Where a plaintiff asserts title under a prior unrecorded deed, and the defendant claims under a recorded deed, the burden is upon the latter to prove that he is a purchaser in good faith for a valuable consideration and without notice, actual or constructive, prior and down to the time of payment (*Kenniff* v. *Caulfield*, 140 Cal. 34 [73 Pac. 803]; *Bell* v. *Pleasant*, 145 Cal. 410 [78 Pac. 957, 104 Am. St. Rep. 61]). A mortgage comes within the same rule, and the law protects or defeats both alike (18 Cal. Jur., Mortgages, sec. 421, p. 114; *Prouty* v. *Devin*, 118 Cal. 258 [50 Pac. 380]).

One of the plaintiffs resided in Pasadena, the place of business of the loan company. The evidence shows that Mrs. Cornwell was in possession of the property, and the president of the loan company testified that he ascertained this before the loans were made, and that she claimed the land as her separate property. He further testified in substance that he had no information that plaintiffs had or claimed any interest therein except such as was contained in letters from the title company. These letters contained the information that the quiet title action was pending but that the title company would insure the loan against it. With the above exceptions the record discloses no inquiry by the loan company. It might be inferred from the letters that some investigation was made by it, but the extent thereof or the result do not appear. The trial court made no finding with respect to the diligence or good faith of either the loan or title company, or upon the question of constructive notice. It found merely that neither company had "any knowledge of the existence of said property settlement agreement prior to the recordation thereof on June 29, 1928, and dealt with said Ella H. Cornwell and with said property on the assumption that said Ella H. Cornwell was the owner of said real property". While the question whether one is an innocent purchaser for value without notice is for the jury (*California Packing Corp.* v. *Lopez,* 207 Cal. 600 [279 Pac. 664, 64 A. L. R. 1412]), as held in *Prouty* v. *Devin, supra,* if there is evidence upon the question of constructive notice it is not sufficient to find merely that a defendant had no actual notice of the existence of an unrecorded instrument, but the court must also find upon the question of constructive notice; otherwise the judgment in favor of a defendant cannot be sustained. With the exception of the testimony of the president of the loan company as to what he knew, neither company has disclosed the extent of its information at the time the last loan was made. The burden being upon defendants to show that the loan company was not in possession of information amounting to constructive notice we are satisfied that the evidence adduced was insufficient to support a finding in their favor on this question.

Defendants claim that the delay in recording the settlement contract should bar a recovery by plaintiffs. Negligence in recording an instrument may constitute an estoppel to question the title of a *bona fide* purchaser (*Schumacher* v. *Truman*, 134 Cal. 430 [66 Pac. 591]). Here twenty-one days elapsed between the execution of this agreement and the recordation of the last trust deed. According to the findings defendants had no knowledge of this agreement at the time, but, as stated, there was no finding with respect to constructive notice; and we cannot say as a matter of law that plaintiffs' delay was sufficient to estop them from asserting their claims.

The court also found that plaintiffs' action was barred by the provisions of section 164 of the Civil Code. This could only be true if the land was community property, or if the plaintiffs succeeded to an interest therein, and could have no application to the enforcement of their rights under the settlement contract.

The same may be said of the contention that the acts of the decedent were such as to estop those claiming under him from asserting an interest in the property.

Mrs. Cornwell executed three deeds of trust upon the property to secure the repayment of money borrowed from the loan company, the dates and amounts of these encumbrances being as follows: September 12, 1925, $12,500; January 4, 1927, $21,000, and August 29, 1927, $24,500. The proceeds of the second and third loans were used to pay off the one which immediately preceded them, respectively. As found by the court, plaintiffs had acquired no interest in the land before the first and second loans were made; and should it be finally determined that the loan company had constructive notice of the contract before its third loan was made it will then be a question for the trial court as to whether under the circumstances the prior encumbrances should in the interest of justice be kept alive. That this may be done in a proper case appears to be well settled. (18 Cal. Jur., Mortgages, sec. 490, p. 197.)

The finding and conclusion of the trial court that the land was separate property is sustained by the evidence, and it will be unnecessary to litigate this issue further. However, there remain to be determined the questions whether the

loan company had constructive notice of plaintiffs' rights when the last deed of trust was executed and the loan secured thereby was made; and if it had, whether that portion of its loan which was used to pay off the loan or loans which preceded it should in equity be chargeable against the interest which plaintiffs acquired under the settlement contract.

The judgment is accordingly reversed and the cause remanded for a determination of these questions.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 28, 1933.