*Decision will be entered under Rule 50.*

HERBERT MARSHALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99559. Promulgated May 7, 1940.

*John B. Milliken, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, and *Alva C. Baird, Esq.*, for the respondent.

## OPINION.

SMITH: Although the petition filed in this proceeding alleges numerous minor errors made by the respondent in the determination of the net income of the petitioner for the years 1933, 1934, and 1935, all of which have been denied by the respondent in his answer, the only real question in issue is whether the petitioner's earnings for the three years in question constituted community property under the California statutes and whether the petitioner is liable to income tax on the entire amount of his earnings.

In his deficiency notice the respondent states with respect to the deficiency determined for 1933:

(a) The division of income on a community property basis has been denied and salary has been increased by $25,392.93, the amount included in the return of your wife. Under the provisions of Mimeograph 3859, Cumulative Bulletin X–1, page 140, husband and wife domiciled in the State of California may each report in separate returns one half of the community income received by them. The above is in accordance with the decision of the Supreme Court in the case of *United States* v. *Malcolm*, rendered January 19, 1931, which made effective the division under the amendment on July 29, 1927 to the Civil Code of California, designated section 161 (a). In view of your wife's status as a nonresident alien, it is held that there was no domicile of husband and wife in California which carried with it community property rights.

For 1934 and 1935 the respondent simply states:

(a) The division of income on a community property basis has been denied and salary received has been increased by the amount included in the return of your wife.

The petitioner contends that he was a resident of and domiciled in California during the years in controversy in this proceeding, and that, since he was a married man, his entire net income was community property. He further submits that:

Independent of any evidence on the matter of domicile, * * * by the terms of the statute defining community property, the California legislature has included in the definition of community property, property acquired in California through personal services without regard to the domicile of the owner at the time it was acquired.

We do not think that there is any merit in the last stated contention. It seems to us clear that, if a married person domiciled in a noncommunity property state performs a contract in California from which he derives income, the income is not to be regarded as community property simply because it was earned in California. It appears to us plain that the law of the state of the domicile must control as to whether earnings are community property or noncommunity property.

Furthermore, it is noted that section 946 of the California Civil Code provides:

§ 946. *By what law governed.* If there is no law to the contrary, in the place where personal property is situated, it is deemed to follow the person of its owner, and is governed by the law of his domicile.

The petitioner refers us to sections 162 and 163 of the Civil Code, which provide as follows:

§ 162. *Separate property of the wife.* All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. The wife may, without the consent of her husband, convey her separate property.

§ 163. *Separate property of the husband.* All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property.

Until 1917 section 164 of the California Civil Code was worded in this manner: "All other property acquired after marriage, by either husband or wife, or both, is community property. * * *" Cases construing the California law under this section of the code appeared to concede that the common law rule of comity—to the effect that the character of personal property is to be determined by the law of domicile of its owner at the time such property was acquired—prevailed. *In re Frees Estate,* 187 Cal. 150; 201 Pac. 112; *In re Nickson's Estate,* 187 Cal. 603; 203 Pac. 106.

In 1917 section 164 of the Civil Code was amended to read as follows:

* * * All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state is community property; * * *

The petitioner submits:

It is apparent from the language of Section 164 after its amendment in 1917 that it was the intent of the Legislature to define as community property all property not included under Sections 162 and 163, the definition of separate property.

The petitioner submits that this proposition is supported by *In re Thornton's Estate*, 1 Cal. (2d) 1; 33 Pac. (2d) 1. In that case the court held that section 164 of the California Civil Code, as amended in 1917, is unconstitutional in so far as it provides that personal property acquired after marriage by husband and wife while domiciled elsewhere than in California, which would not have been the separate property of either if acquired while domiciled in California, becomes community property when the parties become domiciled therein. The petitioner's contention is that, in holding this provision to be unconstitutional the court by inference held that income earned in this state by a person domiciled elsewhere is community property. We can not agree that this was the holding of the court. Cf. *Charles A. Shea*, 30 B. T. A. 1265. The well established rule in California, as well as elsewhere, is that stated in California Jurisprudence Ten-Year Supplement, vol. III, p. 499: "The character of personal property is to be determined by the law of the domicile of its owner at the time of acquisition, irrespective of the law of any subsequent domicile which may be acquired."

It follows that if the petitioner was not domiciled in California during the years 1933, 1934, and 1935 his income earned during those years does not constitute community property under the California laws.

It is the petitioner's contention that he went to California in July 1933, and that he has been domiciled in that state ever since. If he went to California in July 1933, with the intention of making California his permanent home we think there can be no question but that he was domiciled in that state from July 1933. The fact that the petitioner is a British subject would have no bearing upon the question as to whether his earnings while domiciled in California constituted community property. Thus, in *Joe May*, 39 B. T. A. 946, we said: "The community property laws of California do not specifically exclude a resident or nonresident alien from its benefits." See also *J. P. Schumacher*, 32 B. T. A. 1242.

In his brief the petitioner states:

The definitions of domicile are all in agreement in making the test of domicile depend upon two requirements (1) Residence (2) The intent to remain. In order therefore to establish a domicile the two prime factors are the taking up of a residence in a particular place with the intent to make it a permanent abode and in California it is declared in the Political Code that a residence or domicile can be changed or acquired only by "the union of act and intent." *Pol. Code* § 52, Subd. 7, *Chambers* v. *Hathaway,* 187 Cal. 104, 200 Pac. 931.

The respondent argues that even though the petitioner may be held to have been domiciled in California during the years 1934 and 1935, he may not be held to be domiciled in that state during the year 1933. He points to the testimony of the petitioner bearing upon this point to the effect that when the petitioner went to California in July 1933, he had no intention of making that state his permanent place of abode. On direct examination the petitioner was asked:

Q. And when would you say, Mr. Marshall, if you could designate a time, when you decided that you would remain in California indefinitely and reside here indefinitely?

A. It was positively in that same year of 1933, Judge.

Q. What time would you say, if you can fix a time, in 1933, when you think that that conviction became certain on your part?

A. It is rather difficult, but my impression is that it occurred in October, I think, or very early in November, after I had gone on a trip to Hawaii, which, by the way, I omitted as it was part and parcel in making of a picture. Then, on my way back from there, with every increasing assurance that I was going to work here for quite a few years, obviously I was influenced by that as well. That is when I really began to think about it, I think, on that return; it seems familiar to me then.

There is much in the record to indicate that the petitioner during the first part of his stay in California in 1933 had no definite intention to make California his permanent place of abode. In 1932 and 1933 and for some years prior thereto he was under contract to Gilbert Miller for bookings for theatrical appearances on the legitimate stage. Miller's place of business was in New York City. In past years Miller had made arrangements for the petitioner to appear in theatricals in different places in the United States and in England. The petitioner was asked the question relative to the contract which brought him back to this country in July of 1933 for the purpose of making motion pictures:

Q. What were the terms of that contract, if you recall? Was it for a number of pictures or a number of years, or what?

A. Its original form took the shape of my signing with Paramount to do five years of pictures, options, of course, two pictures a year to be tied in with my theatrical commitments with Miller. It was a conditional thing which later did not iron out.

The petitioner had made a success on the legitimate stage. His wife was devoted to the legitimate stage. Moving pictures had no appeal for her. She was an English woman who could not see her way clear to give up the English stage and abandon that career merely because her husband was making a success in moving pictures.

It is also quite clear from the testimony of the petitioner that he was not certain as to whether his initial success in moving pictures would offer a permanent career for him. He stated: "I would like to add to that, if I may, in 1932 it looked far less of a permanent career than it was revealed to me later, and I didn't even think I was going to succeed."

It is furthermore to be noted that if the petitioner was a resident of California in 1933 he was required to file an income tax return in California for 1933. He supposed that the matter of filing a return was being taken care of by Gilbert Miller in New York. This indicates that until the end of 1933 the petitioner looked upon his residence in California as temporary.

All of the gross income earned by the petitioner for 1933 was earned prior to the time that the petitioner had definitely determined to make California his permanent place of abode. His total gross income for 1933 was $59,250. His business manager, Rex Cole, testified:

* * * there was salary of $15,750 received from Metro-Goldwyn-Mayer Studios between August 1 and August 24, 1933, and there was received from Paramount Studios a total of $43,500 which was received from Paramount between August 28th and November 3, 1933, which makes a total of $59,250.

Upon the evidence of record, we sustain the respondent's contention that the petitioner was not domiciled in California at the time he earned his compensation for 1933. The petitioner is therefore liable to income tax upon his total net income for 1933.

There can be no question but that by the end of 1933 the petitioner had definitely formed the intention of making California his permanent place of abode. He was living with his wife in California at the time he formed such intention. The evidence indicates that up until April 1934 the petitioner was domiciled with his wife in Los Angeles. At the time his wife left him, in April 1934, he had no intention of abandoning his residence in California. He hoped that his wife would rejoin him. If she had rejoined him within a reasonable time we do not think that the respondent would or could have raised any question that the petitioner was domiciled in California during the years 1934 and 1935 and entitled to claim the benefits of the statutes of California relating to community property.

The respondent requests that the Board examine the realities of the instant case. He states:

* * * In the instant case, two persons domiciled in England came to California for the first time in 1932. They stayed four months. In 1933 they

came again. The husband decided to stay because his career was here but the wife, after staying for a short time in 1933 and again for a few months in 1934, returned to England, for the reason that her career was there. Since that time they have been separated. It is submitted that such a situation does not come within the reasoning of the community property laws which is to give the wife living in the jurisdiction a share in the husband's earnings in order to protect her and protect the marriage status. Where the wife has a separate domicile of her own outside of the jurisdiction, the reason for these laws disappears. What petitioner is seeking to do in this case is to apply a rule to a situation not within the reason for the rule. He seeks to apply the rule by invoking a fiction of the conflict of laws, namely, that the domicile of the wife follows that of the husband. This section does not apply in a case such as the instant case where two professional people pursue their own respective careers thousands of miles apart. * * *

We do not think that the argument made meets the issue which is presented. It is rather in the nature of a protest against the provisions of the income tax law which permit a person in a community property state to exclude from his income one-half thereof upon the ground that the wife has a vested right therein. Our only query here is whether under the law of the State of California the earnings of the petitioner constitute community property. If they do the petitioner is taxable upon one-half of them. *United States* v. *Malcolm*, 282 U. S. 792. We are of the opinion that the earnings of the petitioner during the taxable years 1934 and 1935 constituted community property, upon the ground that he was a married man and domiciled in the State of California. His wife had not technically deserted him during these years. Section 52 of the California Political Code provides: "5. The residence of the husband is the residence of the wife." It must be held that the petitioner and his wife were legally domiciled in California during 1934 and 1935, and that the earnings of the petitioner constituted community property. The petitioner is taxable upon only one-half of the net income of the community for the years 1934 and 1935.

The respondent contends that the petitioner is liable to the 25 percent delinquency penalty under section 291 of the Revenue Act of 1932 in respect of the returns filed for 1933. The penalty is not, however, incurred where the delinquency in the filing of a return was due to a reasonable cause and not due to willful neglect. There was clearly no willful neglect on the part of the petitioner. He knew that Gilbert Miller had withheld $4,600 of his income for 1933 and he supposed that he was making the required income tax return. When he found out that the required return had not been filed, his business agent in Los Angeles filed the return. In these circumstances we think that the penalty was not incurred.

*Decision will be entered under Rule 50.*