JOHNSON v. MARTI et al. (No. 9103.)

(Court of Civil Appeals of Texas. Ft. Worth. May 10, 1919. On Motion for Rehearing, June 28, 1919.)

1. TRESPASS TO TRY TITLE ⊚⟳38(1) — BURDEN OF PROOF.

In trespass to try title, the burden is on the plaintiff to show title.

2. EVIDENCE ⊚⟳383(7) — MORTGAGES — RECITALS — AUTHORITY OF SUBSTITUTED TRUSTEE—PROOF.

Where trust deed authorized an appointment of a substitute trustee, recitation in a substitute trustee's deed of the failure of the original trustee to act and of the proper request for him to sell, of proper advertisement, and other prerequisites to an exercise of his power, were prima facie proof of the regularity and validity of the sale.

3. TRUSTS ⊚⟳361—RIGHT TO CONVEYANCE OF LAND HELD IN TRUST—REPAYMENT OF PURCHASE PRICE.

One claiming that another acquired land and held it in trust for him is not entitled to compel a conveyance, except upon repayment of the purchase price advanced by such other.

4. VENDOR AND PURCHASER ⊚⟳239(1) — INNOCENT PURCHASER OF LAND.

One purchasing land is not bound by a trust agreement between his grantor and a third person, where he has neither actual nor constructive notice thereof.

5. LIS PENDENS ⊚⟳22(1)—EFFECT.

A lis pendens operates only during pendency of the suit, and only as to matter involved therein, and terminates upon settlement of the suit.

6. VENDOR AND PURCHASER ⊚⟳231(4) — TITLE—NOTICE OF CONVEYANCES.

Where the record disclosed that grantor acquired his title in a sale under a trust deed, purchaser could not be said to claim through another, who claimed under a deed from the original owner and had deeded the same to the grantor; the last deed not being recorded or known to the purchaser.

On Motion for Rehearing.

7. VENDOR AND PURCHASER ⊚⟳223—NOTICE OF CLAIM.

Under a special warranty deed warranting the title "by, through, or under me, but not otherwise," but purporting "to convey the land," a grantee may become a purchaser unaffected by undisclosed equities.

Error from District Court, Tarrant County; Bruce Young, Judge.

Action by Robert G. Johnson against Jost Marti and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Stanley Boykin and Carl W. Wade, both of Ft. Worth, for plaintiff in error.

John L. Poulter, of Ft. Worth, for defendants in error.

CONNER, C. J. Appellant, in the usual form of trespass to try title, instituted this suit against Jost Marti and others to recover certain lands described in his petition, situated in Tarrant county. Upon the conclusion of the evidence the court gave a peremptory instruction in favor of the defendants, and from the judgment following the verdict the plaintiff has appealed.

The evidence, while somewhat complicated is substantially undisputed. It shows that the land in controversy in 1908 was owned by one Fifer Newton who, on July 1st of that year, executed a trust deed conveying the land to Horace H. Cobb, trustee, to secure a debt due the Belcher Land & Mortgage Company. On the 7th day of March, 1916, H. B. Church, as substitute trustee, acting by virtue of the trust deed above mentioned sold said land· to E. G. Gassoway. Thereafter, on January 11, 1917, Gassoway sold the land to G. W. Poulter, who in. turn on the next day, to wit, January 12, 1917, sold to appellee Jost Marti. This may be said to be the title under which the appellee Marti holds.

The title of appellant originated in this way: Fifer Newton, on November 14, 1912, conveyed the land. to J. W. Mays, who on the 20th day of March, 1914, conveyed to Mrs. Miller. The title thus emanating from J. W. Mays to Mrs. Miller passed out of her under an execution sale in favor of a Mrs. Ferguson on the 4th day of June, 1917; the appellant being at this execution sale the purchaser. Appellant, Johnson, also claimed under one John L. Poulter, whose title, if any, arose as follows: After the sale to Mrs. Miller, J. W. Mays, on October 4, 1914, deeded the land to one W. E. Poulter, a brother of J. L. Poulter. John L. Poulter testified to the effect that this conveyance from J. W. Mays to W. E. Poulter was in fact for his benefit, and that pursuant to the trust relation, W. E. Poulter, at a time not

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

definitely fixed in the evidence, but which was at some date between October 4, 1914, and September 18, 1916, deeded the land to John L. Poulter. John L. Poulter, on the 18th day of September, 1916, deeded the land to G. W. Poulter. The deeds from W. E. Poulter to John L. Poulter and from John L. Poulter to G. W. Poulter were never recorded. All other conveyances named above were duly recorded at or near the time of their execution. John L. Poulter further testified that while the title from Mays was in him, to wit, at the time the substitute trustee advertised the lands in controversy for sale under the trust deed by Newton, he, Poulter, approached Gassoway for the purpose of procuring the money necessary to pay the debt for which the land was to be sold, and that it was finally agreed that Gassoway would advance the money and buy the land in his name, to be later conveyed by Gassoway to John L. Poulter upon the payment of the money so advanced. The evidence shows that a written agreement of this character was entered into between Gassoway and John L. Poulter at and prior to the substitute trustee sale above mentioned. The evidence further shows that the West Publishing Company, on the 8th day of December, 1915, recovered a judgment against John L. Poulter in a justice court for about the sum of $41.96. This judgment was duly recorded and abstracted on the 8th day of January, 1916, in the judgment lien records of Tarrant county. Later, to wit, on May 1, 1917, under the judgment last mentioned, the land was sold at constable's sale, appellant becoming the purchaser. It further appears that after John L. Poulter conveyed to G. W. Poulter, as hereinabove stated, G. W. Poulter instituted a suit in the district court of Tarrant county against said Gassoway to recover the land in controversy, setting up in said suit the agreement made between Gassoway and John L. Poulter, and claiming title by virtue thereof and by virtue of the deed from John L. Poulter to him, G. W. Poulter.

A lis pendens notice of this suit was duly filed for record on September 23, 1916, and recorded the same day in the lis pendens records of Tarrant county. This suit was disposed of or "settled" as shown by the verbal testimony relating to that subject, on the 11th day of January, 1917, by Gassoway executing and delivering the conveyance hereinbefore mentioned.

[1, 2] A close analysis of the foregoing statement of facts will show, we think, that appellant's claim of title can only rest on either the title proceeding from J. W. Mays to Mrs. Miller or to the title, if any, acquired under the sale by virtue of the judgment in favor of the West Publishing Company. Counsel for appellant concedes that the sale by the substitute trustee, if valid, extinguished whatever title J. W. Mays passed to Mrs. Miller, and the only attack made upon the substitute trustee's sale is the suggestion that it was not shown that the substitute trustee had been duly appointed in lieu of H. H. Cobb, the original trustee. But this suggestion, we think, must be overruled, in view of the fact that the burden of proof was upon the plaintiff in this suit, and the statement of facts fails to show any defect of the kind suggested. Neither the original trust deed to H. H. Cobb nor the deed by the substitute trustee to Gassoway appears in the statement of facts. As to these instruments the statement of facts merely recites that the plaintiff offered in evidence "deed of trust of Fifer Newton and wife, Icy Newton, to Horace H. Cobb, trustee, * * * fixing a lien on the real estate in controversy in this suit," etc., and the "plaintiff offered in evidence deed by H. B. Church, substitute trustee to E. G. Gassoway, * * * conveying the land in controversy in this suit." In the absence of any intimation in the evidence that the original trust deed was insufficient, or that Church was not duly appointed and authorized to make the sale, we think we must find that the original trust deed "fixed" a lien on the land in controversy, and that H. B. Church was "substitute trustee," and, if he was, his appointment in no wise questioned in the statement of fact must be assumed to have been legal; otherwise he could not be, in fact, a substitute trustee and have "conveyed the land." As recited in this connection it is to be remembered that as presented to us it appears that the trial court had the original trust deed and the substitute trustee's deed to Gassoway before him, and must have concluded from an inspection of them that the trust deed authorized an appointment of a substitute trustee, and that recitations in the substitute trustee's deed of the failure of the original trustee to act and of the proper request for him to sell the land and of the proper advertisement of the sale under the terms of the trust deed, and of other prerequisites to an exercise of his power, all constituted, at least, prima pacie proof of the regularity and validity of the substitute trustee's sale. See McCreary v. Reliance Lumber. Co., 16 Tex. Civ. App. 45, 41 S. W. 485, holding in effect, that when authorized by the trust deed the recitals in the trustee's conveyance to a purchaser constitute prima facie evidence of his power to sell. Indeed, appellant seems to place but little stress upon his claim of title under the deed to Mrs. Miller, and we conclude that appellant in fact showed no title whatever by virtue of the execution sale in Mrs. Ferguson's favor against Mrs. Miller.

[3] Nor do we think the record shows any title in appellant by virtue of the proceed-

ings relating to John L. Poulter. J. W. Mays had no title in him to transmit at the time he made conveyance to W. E. Poulter in trust for John L. Poulter, for he had theretofore already conveyed to Mrs. Miller all the title acquired by him from Fifer Newton, and W. E. Poulter's deed therefore to John L. Poulter conveyed nothing. By virtue thereof, however, he seems to have asserted title, and, as stated, arranged with Gassoway to buy in the land at the substitute trustee's sale. Assuming that John L. Poulter acquired any right or equity by virtue of this agreement, it was certainly dependent upon John L. Poulter's agreement to refund to Gassoway the money expended in the purchase. The evidence shows without dispute that John L. Poulter never did this. What title then, either legal or equitable, to the land in controversy existed in John L. Poulter, upon which the abstracted judgment of the West Publishing Company could operate? It is only upon the "real estate situated in the county" where an abstract of judgment is recorded that a lien is created. See Vernon's Sayles' Civil Statutes, art. 5616. Unless, therefore, a consideration of other facts in the record require a different conclusion, it seems perfectly clear that John L. Poulter owned nothing except possibly a mere equity upon which the abstracted judgment could operate. See Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 168.

[4, 5] But what effect, if any, must be given to the conveyance by John L. Poulter to G. W. Poulter and the proceedings in the suit of the latter against Gassoway? It is evident that John L. Poulter in his transfer to G. W. Poulter at most only conveyed an equity that he (John L. Poulter) had under the trust agreement with Gassoway. John L. Poulter testified that while he had not paid Gassoway the money he was to pay under his alleged trust agreement that, nevertheless, Gassoway had from time to time extended the period of payment, and it may, therefore, be said that John L. Poulter conveyed to G. W. Poulter an equity that was enforceable by the latter against Gassoway. But assuming this to be true, we do not see our way clear, as against the trial court's ruling, to say that appellee, Jost Marti, is to be bound by the proceedings referred to. It is undisputed, as already noted, that the deed from W. E. Poulter to John L. Poulter and from John L. Poulter to G. W. Poulter were both unrecorded, and appellee Marti testified without contradiction that he knew nothing of them. Appellant, however, insists that appellee had notice both because of the lis pendens notice and because he claimed through the John L. Poulter title, but as against this contention it must be said that the lis pendens notice was in the name of G. W. Poulter and not John L. Poulter. The lis pendens notice also did not contain any recital referring to a transfer or a right of John L. Poulter. Moreover, so far as appears from the testimony, the suit of G. W. Poulter against Gassoway was settled, and therefore presumably ended on the 11th day of January, 1917, the day before appellee purchased of G. W. Poulter, which was on January 12, 1917. Whatever effect be given to the lis pendens notice, it ended with the termination of the suit by G. W. Poulter against Gassoway. See Roseborough v. Cook, 108 Tex. 364, 194 S. W. 131. So that it cannot be said, we think, that Marti had constructive notice of the equity, if any, in John L. Poulter, or that the abstracted judgment at any time ever operated upon the land in controversy in this suit.

[6] Appellant, however, further contends that Marti claims through the John L. Poulter title, and therefore was affected with constructive notice of the recitals in the several deeds from W. E. Poulter to John L. Poulter and from John L. Poulter to G. W. Poulter. But we fail to see how an investigation of this title, had one been made, would have developed any serious hesitancy, for the reason that the record of deed from G. W. Mays to Mrs. Miller would most naturally have brought an intended purchaser to the conclusion that John L. Poulter acquired no title to the land. But it cannot be said, we think, that appellee Marti claimed through what may be termed the John L. Poulter title. It is true John L. Poulter had made a deed to G. W. Poulter from whom Marti purchased, but this deed, as heretofore stated several times, was not of record, nor was the deed from W. E. Poulter to John L. Poulter of record. The record only disclosed that G. W. Poulter acquired his title from the substitute trustee Church, and that Church was empowered to convey title by virtue of the terms of the original trust deed executed by Newton long prior to any attempted acquisition of title by J. W. Mays, through whom alone John L. Poulter claimed.

We conclude that all assignments of error must be overruled, and the judgment affirmed.

## On Motion for Rehearing.

It is very earnestly insisted in behalf of appellant that we erred in indicating that, at best, John L. Poulter had but an equity upon which the abstract of the judgment in favor of the West Publishing Company could operate. It is insisted upon the authority of such cases as Hirshfeld v. Howard, 60 S. W. 806, that an express trust was created by virtue of the agreement between Gassoway and John L. Poulter, and that the effect was to vest in John L. Poulter the beneficial interest in the real estate to which that agreement related, and upon which, there-

fore, the abstract of judgment operated. That such an agreement under other circumstances would have the effect contended for will not be disputed, but it is to be remembered, as observed in our original opinion, that John L. Poulter, at the time of this agreement, unlike the circumstances of numerous cases cited in behalf of appellant, had no interest whatever in the land in controversy at the time of the agreement with Gassoway, and we think it clear from the evidence that he at no time complied with an essential condition of title in him by the payment to Gassoway of the sum Gassoway paid at the trustee's sale, as agreed upon. John L. Poulter failed to testify to any such payment. Gassoway distinctly denied it, and G. W. Poulter testified to the effect that the sums paid by him to Gassoway were not paid for the benefit of John L. Poulter. Under such circumstances, we continue to think that the case of Hoffman v. Buchanan, 57 Tex. Civ. App. 368, 123 S. W. 168, is more nearly applicable to the case under consideration than are the cases cited in behalf of appellant.

The foregoing conclusion, however, but leads us to the further contentions in behalf of appellant that Marti at the time of his purchase had both actual and constructive notice of the asserted title in John L. Poulter. Proof of notice to Marti, either actual or constructive, was necessary in order to defeat his title, even though it should be conceded that John L. Poulter, in fact, had an equitable title to which the abstracted judgment under which appellant claims could attach. We have, however, carefully examined the record, and find no proof of actual notice. Marti, in his testimony expressly denied any knowledge whatever of the various deeds to John L. Poulter, and also denied knowledge of the agreement between John L. Poulter and Gassoway, testifying that he had heard of the suit by G. W. Poulter against Gassoway, but paid no attention to it for the reason that at the time he was not contemplating the purchase of the land. And no witness whose testimony we have examined testified that Marti had knowledge of the claim by John L. Poulter to the land in controversy at that time. Nor do we think notice constructively was shown. At the time of Marti's purchase the lis pendens notice was not operative as to Marti; and, while the lis pendens notice was shown to have been included in the abstract of title delivered to Marti, it conveyed no substantial information other than that G. W. Poulter had instituted his suit against Gassoway for the land. The written agreement between Gassoway and John L. Poulter was not embodied in the lis pendens notice, so far as the record shows. The fact that an abstract of title was delivered to Marti before his purchase is relied upon. But the abstract is not set out in the record before us, and it does not

appear from any testimony called to our attention that the written agreement between Gassoway and John L. Poulter, or any of the deeds to John L. Poulter, was included, in the abstract. Marti testified, without contradiction, that while he received the abstract he did not himself examine it, but referred to others the matter of its sufficiency, and was assured by the agent who negotiated the sale, and by the lawyer to whom the abstract was referred for examination, and by John L. Poulter himself, that the title was good. So that we fail to find any circumstances which placed Marti, his agent or attorney upon further inquiry.

[7] The deeds in this case from Gassoway to G. W. Poulter and from the latter to appellee Marti are special warranty deeds. That is Gassoway and G. W. Poulter severally warranted the title "by, through, or under me, but not otherwise." But appellant insists that the deeds are in effect but quitclaim deeds, and that therefore Marti took the land subject, as a matter of law, to the equity of John L. Poulter. In other words, that under this form of warranty appellee could not be an innocent purchaser for value, notwithstanding Marti's want of actual knowledge, and notwithstanding the absence of circumstances sufficient to put him upon inquiry.

In support of this contention, appellant cites the cases of Hudman v. Henderson, 58 Tex. Civ. App. 358, 124 S. W. 186, Richardson v. Levi, 67 Tex. 364, 3 S. W. 444, and other cases of similar import.

We deem it unnecessary to discuss the proposition stated at length. We think it sufficient to say that by an examination of the cases cited it will be found that they were cases in which the grantors did not undertake in the granting clause to convey title to the land. The undertaking was merely to convey whatever of title or interest the grantor may have had. And it was held, and rightly we think, in such cases, the grantee was affected with notice of any equity to which the land was subject. In the case before us, however, the statement of facts show that both the deeds from Gassoway to G. W. Poulter and from G. W. Poulter to Jost Marti purported "to convey the land in controversy in this suit." Under such form of conveyance it is very plain, even under the authorities cited by appellant, that a grantee may become a purchaser unaffected by secret and undisclosed equities. To illustrate, in the case of Richardson v. Levi, supra, in speaking of the warranty clause to deeds, our Supreme Court said:

"This clause forms no part of the conveyance. When the instrument in which it is contained purports to make a full and perfect conveyance of the land described in it, this clause does not strengthen or enlarge the title conveyed. It is a separate contract to which the grantee agrees to pay damages if the title fails; but

it does not make the title itself any better. If it accompanies a deed which conveys only the right and title of the grantor, it evidences a confidence of the grantor in his title to the land, and a want of like confidence on the part of the grantee in such title. But an unrestricted conveyance of the property for a fair consideration shows that the purchaser supposes that he is getting the whole estate, though he takes no separate contract for the return of the purchase money in case he does not. Judge Story said in the case of Flagg v. Mann, 2 Sum. 562 [Fed. Cas. No. 4847] that he was not aware that any covenant of general warranty had ever been held necessary to entitle the vendee to make the defense of innocent purchaser, when he bought the property and not the interest of the grantor. If he gives a full price for an unquestioned and unquestionable fee simple, the absence of covenants of general warrant ought not to take away from him the common protection. This affords proof that he had no suspicion of the title not being perfect, and he was 'on equal equity with any person claiming under an outstanding and unknown trust; and, if so, the legal title combined with the equity ought not to be disturbed.' "

Other cases of like effect might be cited, but we conclude that enough has been said, and that, for the reasons indicated, the motion for rehearing should be overruled.