[Civ. No. 9343. First Appellate District, Division Two.—June 18, 1934.]

D. A. HAMBURGER et al., Appellants, v. G. E. ELLINGSON et al., Respondents.

312

Mitchell, Silberberg & Knupp, Guy Knupp and James W. Mack for Appellants.

O'Connor, Divet & Mulvane, J. F. T. O'Connor, A. G. Divet and C. J. Mulvane for Respondents.

STURTEVANT, J.—From a judgment in favor of plaintiffs foreclosing a mortgage they have appealed from the last paragraph of the judgment and have brought up the judgment-roll only.

On the sixteenth day of March, 1926, the defendants G. E. Ellingson, Herbert W. Schmidt, Mary L. Schmidt, his wife, I. Pelsner and May Pelsner, his wife, executed their note to Martin T. Sayre and Josie D. Sayre. To secure the payment of that note they also executed a mortgage on real estate in Los Angeles County. On the eighteenth day of February, 1928, the note and mortgage were assigned to the plaintiffs. On the eleventh day of November, 1927, I. Pelsner and May Pelsner, his wife, and G. E. Ellingson, being the record owners of the real estate, conveyed it to Equitable Realty Company, a corporation. The deed recited, among other things: "Subject to a mortgage of record securing a note for $32,000 (the note in suit) which said mortgage the grantee herein by the acceptance of this deed assumes and· agrees to pay." The Equitable Realty Company did accept the deed. On September 8, 1931, there had been paid on the principal $3,750. The interest had been paid down to March 16, 1931, otherwise the payments of principal and interest were in default and the plaintiffs commenced this action. On the ninth day of May, 1931, the plaintiffs executed a partial release. In their complaint the plaintiffs named the mortgagors as defendants and they also named the grantee of the mortgagors.

In the prayer of their complaint, among other things, they asked, " . . . that plaintiffs have judgment and execution against defendants G. E. Ellingson, Herbert W. Schmidt, Mary. L. Schmidt, I. Pelsner, Mary Pelsner, and Equitable Realty Company, a corporation, and each of them for any deficiency which may remain after applying the proceeds of the sale of such mortgaged property . . . " In its findings the trial court found all of the allegations of the complaint of the plaintiffs to be true. The last paragraph of the judgment which is the subject of the attack on this appeal is as follows:

"It is further ordered, adjudged and decreed that the deficiency judgment, if any, entered herein, upon and after the sale of said real property, shall first be satisfied from the property of the defendant Equitable Realty Co., to the extent that such property shall be sufficient for such purpose and that no execution for said deficiency judgment or any part thereof shall issue against the property of the defendants G. E. Ellingson, I. Pelsner and/or May Pelsner unless the property of the said defendant Equitable Realty Co. shall be insufficient to satisfy said deficiency judgment, in which event the plaintiffs may have execution against the property of said defendants G. E. Ellingson, I. Pelsner and May Pelsner, or either of them, for any part of said judgment remaining unsatisfied." The plaintiffs freely concede, and in their brief they state:

"It has been frequently held that the assumption of a mortgage by the mortgagor's grantee renders the grantee the principal debtor and the mortgagor his surety to pay the debt. (*Williams* v. *Naftzger,* 103 Cal. 438 [37 Pac. 411]; *Hopkins* v. *Warner,* 109 Cal. 133 [41 Pac. 868].) The assumption of the debt obligates the mortgagor's grantee to hold the mortgagor harmless. (*Beach* v. *Waite,* 21 Cal. App. 304 [131 Pac. 880]; *Tompkins* v. *Powers,* 106 Cal. App. 464 [289 Pac. 685].)" Nevertheless they contend: "In the case at bar, the court below attempted to compel appellants, assignees of the mortgagees, first to exhaust their remedies against the grantee of the mortgagors, who assumed the mortgage, and this was made a condition precedent to the enforcement of the deficiency judgment against the mortgagors. This clearly denies to the mortgagees their right unconditionally to enforce their contract

with the mortgagors. No fact exists justifying the imposition of this burden upon the mortgagees or their assigns. The principles summarized herein indicate that the imposition of such conditions is inconsistent with the rights of appellants to enforce the mortgage given by respondents; also, that such conditions negative the very conclusion of the court that appellants are entitled to a deficiency judgment against the respondents. It was therefore error to include in the judgment the provisions of the last paragraph thereof." In support of their contention they cite no authority that is directly in point. While in our examinations we have not found numerous authorities, those that we have found do not sustain the contention of the plaintiffs. In 50 C. J., at page 225, the author states as follows: "Where a judgment has been obtained against both the principal and the surety, the creditor, in the absence of a contrary provision of the statutes, may, at law, levy upon the property either of the surety or of the principal, but in chancery the property of the principal should be subjected first to the discharge of the obligation; . . . " In the same book, at page 224, the same author states: "A decree in equity should provide for first exhausting the estate of the principal, unless he is utterly insolvent." In 1 Pomeroy's Equitable Remedies, section 12, the author states: "In the infancy of the court of chancery while the chancellors were developing their system in the face of a strong opposition, in order to avoid a direct collision with the law and with the judgments of law courts, they adopted the principle that their own remedies and decrees should operate *in personam* upon defendants and not *in rem.*" In the leading case, *Horton et al.* v. *Bond*, 28 Gratt. (69 Va.) 815, a decree in equity which failed to direct the manner in which the execution should issue was reversed. On page 825 the court said: "The court is further of opinion that if a sale was proper at all, the said decree of the county court is also erroneous in ordering a sale of all the lands of the sureties *uno flatu*, and in vesting the commissioner with discretionary power as to the order in which said lands should be sold. While it is true that the sureties as well as their principal are all bound by the complainant's judgment, and he has the undoubted right to resort for satisfaction to the property of each and all of them, yet, in equity, in a suit in which

all the parties are alive and before the court, the court will respect the equities of the parties *inter sese,* and administer them upon the principles peculiar to the forum, as far as that can be done without too great delay and without prejudice to the rights of the creditor. The principal debtor's lands should be first subjected to the exoneration of the lands of the sureties." In the case of *Boughton* v. *Bank of Orleans,* 2 Barb. Ch. (N. Y.) 458, at page 462, the court said: "But the principle of equity is well established that the property of the principal debtor is primarily liable, and should be first resorted to. And if the sheriff, with a full knowledge of the facts, wilfully violates the principle of equity in this respect, the surety certainly is not without remedy. For if he cannot recover in an action upon the case against the sheriff, this court ought, unquestionably, to grant him relief, upon a bill filed for that purpose." In the case entitled *Patton's Admr., etc.,* v. *Patton's Heirs,* 3 B. Mon. (42 Ky.) 160, commencing on page 161, the court said: "But as William Patton was the *principal* in the guardian bond, his whole estate, real and personal, should be first made liable to the payment of the whole demand due to the wards. It would be subjecting the estates of the sureties to an unnecessary and oppressing burthen, to subject them first to the payment of the demand due to the wards, and afterwards to sell the estate which has devolved upon them from their father, the *principal,* for the indemnification of the sureties. The estate, real and personal, of the guardian, which can be had, should be first sold, and the amount which can be made ascertained, and a decree rendered against the representatives of the sureties for the residue." (See, also, *Womack* v. *Glasgow,* 84 Va. 9 [5 S. E. 550]; *Wytheville Crystal Ice & Dairy Co.* v. *Frick Co.,* 96 Va. 141 [30 S. E. 491]; *Beckham* v. *Duncan,* (Va.) [9 S. E. 1002].)

■ In support of the judgment, there being nothing showing to the contrary this court is bound to assume that from the time these plaintiffs became the owners and holders of the note and mortgage they received payments of interest from the Equitable Realty Company and received a payment of principal, $3,750, also from it; and that these plaintiffs had notice of the assignment of the real estate to the Equitable Realty Company. From the time

that they had such notice the rule applicable to them is stated in 3 Pomeroy's Equity Jurisprudence, section 1206, as follows: "As between the mortgagor and the grantee, the grantee becomes the principal debtor primarily liable for the debt, and the mortgagor becomes a surety, with all the consequences flowing from the relation of suretyship. As between these two and the mortgagee, although he may treat them both as debtors and may enforce the liability against either, still, after receiving notice of the assumption, he is bound to recognize the condition of suretyship, and to respect the rights of the surety in all of his subsequent dealings with them." It follows that the contention made by the plaintiffs is without merit.

In their next point the plaintiffs state: "The stay of execution upon the judgment for the deficiency against the respondents is (a) burdensome and inequitable to the appellants and (b) unauthorized under the provisions of section 681a of the Code of Civil Procedure." Instead of being burdensome and inequitable we have shown above that the judgment was entirely equitable. If it was burdensome it was not unlawfully burdensome. Section 681a limits a stay of execution. It is perfectly clear that this case does not come within the purview of that section. The trial court did not stay the execution but properly limited the manner of its use.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.