[Civ. No. S. C. 1.  Second Appellate District, Division One.—December 24, 1936.]

CORA LEE HARRIS, Executrix, etc., Appellant, v. WHITTIER BUILDING AND LOAN ASSOCIATION (a Corporation) et al., Respondents.

Michael F. Shannon, Thomas A. Wood and Robert H. Dunlap for Appellant.

Rex Hardy for Respondents.

WHITE, J., *pro tem.*—Appeal by plaintiff from a judgment in favor of defendants, denying an injunction against foreclosure of a trust deed and denying a declaratory judgment that the trust deed in question covered only on undivided one-half interest in the property conveyed thereby. Upon the death of the plaintiff, I. Henry Harris, his executrix, Cora Lee Harris, as such executrix, was substituted as plaintiff by order of the superior court. The cause was submitted to the trial court solely upon a written stipulation of facts, together with the amended complaint, amendments thereto, the answers of the defendants as amended, and certain exhibits.

The salient facts are that in January, 1922, one Passons contracted in his own name to buy the tract of land involved in this action, subject to encumbrances of record held by Pacific-Southwest Trust and Savings Bank and George P. Adams. In March, 1923, Passons and one Champagne entered into an oral arrangement whereby they were to jointly develop and exploit the land and divide the profits equally between them at the expiration of three years, when an accounting was to be had and a division of the profits, if any, was to be made. This agreement provided that if the arrangement were terminated sooner than three years Mr. Champagne should receive $5 per day for his services for the time that elapsed after March 31, 1923. Passons received title to the property in question in his own name, subject to encumbrances of record. About June 22, 1924, Passons terminated his arrangement with Champagne and tendered the latter $5 per day by way of compensation, as provided for in the arrangement between them, but Champagne refused the tender. On June 16, 1924, Champagne brought suit against Passons for an accounting and division of the profits and sought to be adjudicated the owner of an undivided one-half interest in the said real property. On that same date he caused a *lis pendens* to be recorded in the office of the county recorder, wherein the action was re-

ferred to and the property described. This action was in-
stituted by I. Henry Harris, as attorney for said Cham-
pagne, upon an oral arrangement between them whereby
Champagne agreed to pay to said attorney, Harris, fifty
per cent of all moneys that might be recovered or to convey
to Harris an undivided one-half interest in and to any
property Champagne might receive by reason of said action.
This contract between Champagne and Harris was not re-
corded, nor was any notice of such arrangement ever re-
corded; and respondent herein, it appears, never had any
knowledge of such arrangement until the present action was
instituted by Attorney Harris against respondent. Upon
the trial of the aforesaid case of *Champagne* v. *Passons,* the
superior court denied an accounting and entered a judgment
declaring that Champagne had no interest in the real prop-
erty, holding that the oral agreement sued upon was in the
nature of an employment and that Passons had the right to
discharge Champagne at pleasure. The judgment thereupon
awarded Champagne wages at the rate of $5 per day, in
accordance with the aforesaid tender made by Passons to
Champagne. On December 30, 1925, Champagne took an
appeal from the judgment. On December 27, 1927, while
said appeal was pending and undecided, Passons executed
and delivered to respondent Whittier Building and Loan
Association his promissory note in favor of said respondent
in the sum of $26,000, and at the same time, as security for
payment of said note, delivered to respondent building and
loan association a deed of trust, executed by Passons as sole
owner of the property, and covering the entire property
herein referred to. It appears that under instructions of
Passons, the respondent building and loan association paid
out of the said $26,000 the sum of $21,250.02 in discharge
of the prior encumbrances of record and paid out the further
total sum of $4,426.58 for permanent improvement on said
property, taxes, a policy of title insurance, recording charges
and insurance for the protection of said property. The
balance of said loan, in the sum of $321.40, was utilized in
accordance with instructions of Passons. The facts indicate
that respondent building and loan association had actual
knowledge of the judgment rendered by the trial court in
the case of *Champagne* v. *Passons,* and was aware of the
pendency of the appeal from said judgment, at the time it

received the note and trust deed from Passons and expended the money aforesaid; but respondent did not have any notice or knowledge of the arrangement between Champagne and his attorney, I. Henry Harris.

On November 17, 1928, the District Court of Appeal rendered its decision (*Champagne* v. *Passons*, 95 Cal. App. 15 [272 Pac. 353]), declaring, in substance, that the arrangement between Champagne and Passons constituted a joint venture, and that Passons' attempted cancellation of the arrangement afforded Champagne an action for accounting, and that the refusal of the trial court to direct an accounting constituted reversible error. The District Court of Appeal reversed the judgment of the trial court and remanded the cause for further proceedings in accordance with the views expressed in the opinion. The *remittitur* was filed in the trial court on January 23, 1929. No further proceedings were ever had in that case, but on May 16, 1929, the case was dismissed at the request of I. Henry Harris, acting as attorney for Champagne. It appears from the record that the dismissal was occasioned by a settlement entered into between the parties, including Attorney Harris. Under the terms of this settlement, which took place in April, 1929, several months after the decision of the District Court of Appeal, and which was conducted through an escrow, Champagne and Harris each paid several thousand dollars into the escrow for the account of Passons, and the latter in turn deposited a deed in escrow conveying to and vesting in Champagne and Harris each an undivided one-fourth interest in the real property in dispute, but subject to the trust deed of record in favor of respondent building and loan association herein. Written instructions, furnished the escrow holder and signed by Champagne and Harris, authorized the escrow holder to procure assurance of title from California Title Insurance Company which would show the record title to the real property covered by said deed of trust vested in Harris as to an undivided one-fourth interest and in said Champagne as to an undivided one-fourth interest, free of encumbrances except taxes, conditions and restrictions of record, and "trust deed securing an indebtedness of $26,000, balance approximately $24,174.91, as per its terms now of record, in favor of Whittier Building and Loan Association . . . one quarter of which each of the

above grantees assumes and agrees to pay''. On May 29, 1929, the escrow was closed and the deed from Passons to Champagne and Harris as to their respective undivided one-fourth interests, subject to the trust deed of record, and containing the agreement on the part of the grantees each to pay one-quarter of the encumbrance, was recorded. There is in the record abundant evidence to show that thereafter Harris and Champagne, as well as Passons, dealt with the property as the owners thereof in accordance with their several interests. The record indicates that Harris, at the time of the settlement of the aforesaid litigation through escrow, had actual knowledge of the existence of the trust deed encumbrance in favor of respondent building and loan association, paid interest on said encumbrance, authorized payment of taxes out of money on hand, and later corresponded by letter relative to extending the time within which to meet payments due on the encumbrance. As late as September 1, 1932, Harris wrote a letter to the building and loan association relative to an existing default, agreeing to give the respondent association all money coming in from the property monthly and promising to get money from other sources with which to make payments on the loan, and asking the association for an additional thirty days' time within which to do so. An example of Harris' correspondence with respondent building and loan association is the following, under date of September 20, 1932:

''With relation to the loan on our property at Pico, I regret to advise you that I have as yet nothing definite looking either toward a refinancing of the loan or paying the indebtedness, although I have a promise from two sources of a loan sufficient to take care of the deficiency. . . . in the future you will receive from $250.00 to $300.00 a month until we take care of the deficiency. This may mean that Mr. Champagne and myself will have to go into our pockets for $150.00 a month, but we are prepared to do that if you will help us. . . . ''

In June, 1933, by reason of default in all payments due since March 1, 1933, on the note secured by said trust deed, respondent Whittier Building and Loan Association, as beneficiary under the trust deed, gave notice to the trustee of its election to sell the property because of the alleged breach, and on June 10, 1933, the trustee recorded a notice

of breach and election to sell. On September 21, 1933, Harris filed the present action in his own name to enjoin the proposed sale of said property and to obtain the other relief hereinabove referred to.

■ In seeking a reversal of the judgment herein, appellant contends that respondent building and loan association had both actual and constructive notice of the pendency of the *Champagne* v. *Passons* action. Be that as it may, the law is well settled that a purchaser of real property against which a *lis pendens* has been filed takes the property subject only to any judgment that may be entered in the action. The effect of a *lis pendens* is to give constructive notice of all of the facts apparent upon the face of the pleadings, and of those other facts of which the facts so stated necessarily put a purchaser on inquiry (17 R. C. L., "Lis Pendens", sec. 7, p. 1014), and a subsequent purchaser takes subject to any judgment that may be rendered in the action of the pendency of which notice is given. (16 Cal. Jur., "Lis Pendens", sec. 12, p. 658.) While it has been held that the doctrine extends to a compromise of litigation and a decree entered accordingly (*Turner* v. *Babb*, 60 Mo. 342), according to the decisions, if, as in the instant case, the action is settled and is abandoned or dismissed without any consent decree or judgment ordering an accounting or determining any rights of Champagne in the real property in question, the *lis pendens* is terminated, and a person acquiring an interest before settlement, abandonment or dismissal does not take such rights *pendente lite* so as to be affected thereby. (38 Cor. Jur., "Lis Pendens", secs. 65, 67, p. 40; *Bailey* v. *Ford*, 132 Ark. 203 [200 S. W. 797]; *Johnson* v. *Marti*, (Tex. Civ. App.) 214 S. W. 726; *Wells* v. *Goss*, 110 La. 347 [34 So. 470]; *Olson* v. *Cornwell*, 134 Cal. App. 419, 426 [25 Pac. (2d) 879].)

■ No judgment except one of dismissal was entered in the *Champagne* v. *Passons* case herein, and this was done pursuant to the agreement between the parties thereto settling their differences, and through which agreement of settlement plaintiff Harris acquired an interest in the land. These facts bring the case within the rule above stated, and the rights of respondent building and loan association were unaffected by the *lis pendens* filed. Conceding the correctness of appellant's claim that respondent building and loan

association had actual knowledge of the pendency of the *Champagne* v. *Passons* action, we are nevertheless of the opinion that Harris, having received in the settlement agreement his share of the land subject to the respondent's deed of trust, and having covenanted to pay one-fourth of the same, cannot now be heard in equity to repudiate his agreement to liquidate his share of the trust deed and note here in question.

Where, as in the instant case, the irrefutable facts are that the original plaintiff, Harris, as grantee, accepted his deed expressly subject to the then existing deed of trust and assumed and agreed to pay his proportionate share of the encumbrance, he is estopped to deny the validity of such encumbrance. The deed to said plaintiff Harris contained an unequivocal recognition of the trust deed in question as a valid and subsisting obligation and lien on the property, and a promise to pay his proportionate share as a part of the consideration for the conveyance. It is settled by an almost unanimous line of decisions in this country, approved by all text writers, that such a recital in a deed, even when the deed is not executed by the grantee, is conclusive evidence in favor of the holder of the trust deed and against the grantee in the deed of the existence and validity of the deed of trust. The effect of such a recital is to charge the land with the lien as effectually as if the purchaser himself had executed a mortgage of that purport. (*Alvord* v. *Spring Valley Gold Co.,* 106 Cal. 547, 552, 553 [40 Pac. 27].) Under such circumstances, the purchaser is estopped to deny the validity of such encumbrance. (*Read* v. *Mortgage Guarantee Co.,* 11 Cal. App. (2d) 137 [53 Pac. (2d) 377]; *Ames* v. *Occidental Life Ins. Co.,* 210 Cal. 271 [291 Pac. 182]; *Esposti* v. *Rivers Brothers, Inc.,* 207 Cal. 570 [279 Pac. 423]; *Matthews* v. *Ormerd,* 140 Cal. 578 [74 Pac. 136]; *Patten* v. *Pepper Hotel Co.,* 153 Cal. 460 [96 Pac. 296]; *State Finance Co.* v. *Moore,* 103 Wash. 298 [174 Pac. 22]; *Selby* v. *Sanford,* 7 Kan. App. 781 [54 Pac. 17]; *United States Bond & Mortgage Co.* v. *Keahey,* 53 Okl. 176 [155 Pac. 557, L. R. A. 1917C, 829]; *Foy* v. *Armstrong,* 113 Iowa, 629 [85 N. W. 753].) In fact, it has been frequently held that the assumption of a mortgage or trust deed by the mortgagor's grantee renders the grantee the principal debtor and the mortgagor his surety to pay the debt.

(*Williams* v. *Naftzger*, 103 Cal. 438 [37 Pac. 411] ; *Hopkins* v. *Warner*, 109 Cal. 133 [41 Pac. 868].) The assumption of the debt obligates the mortgagor's grantee to hold the mortgagor harmless. . (*Hamburger* v. *Ellingson*, 139 Cal. App. 311, 313 [33 Pac. (2d) 850] ; *Beach* v. *Waite*, 21 Cal. App. 304 [131 Pac. 880] ; *Tompkins* v. *Powers*, 106 Cal. App. 464 [289 Pac. 685].) ▮ In the case at bar, the original plaintiff Harris not only entered into the escrow instructions and accepted the deed with full knowledge and recognition of the existing trust deed, but thereafter on several occasions he treated with the respondent on the basis that he, said Harris, was a debtor of the respondent. Clearly such conduct constitutes sufficient evidence that said Harris had assumed payment of his share of the encumbrance.

▮ Appellant further contends that because the notice of breach and election to sell under the deed of trust was signed on June 3, 1933, and the sum of $60 was paid to the beneficiary two days thereafter, and that on June 10, 1933, the notice of breach and election to sell was duly recorded, the acceptance of said sum of $60 on June 3d operated as a waiver of the right of respondent to declare the default. This claim, under the facts of this case, is without merit, because it has been repeatedly held that the mere acceptance of interest or a small amount on the principal after the notice of forfeiture is given will not of itself revive the contract, because one may accept payment of part of his indebtedness without thereby waiving his right to receive the balance. As was held in the case of *American Loan & Trust Co.* v. *Union Depot Co.*, 80 Fed. 36 (quoting from the syllabus) ''When a suit for the foreclosure of a mortgage has been commenced, based on a default in the payment of interest, the cause of action does not fail, and the right to maintain the suit is not waived, by the mortgagee's acceptance of interest while other instalments of past due interest remain unpaid.''

By reason of the foregoing conclusions, it becomes unnecessary to discuss other points raised.

The judgment appealed from should be, and it is, affirmed.

York, Acting P. J., and Doran, J., concurred.