[Civ. No. 10051.   First Appellate District, Division One.—January 19, 1937.]

CENTRAL BANK OF OAKLAND (a Corporation), Respondent, v. WELLS FARGO BANK AND UNION TRUST COMPANY (a Corporation) as Executor, etc., Appellant.

Sherman & Peters and John W. Preston for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

McNUTT, J., *pro tem.*—Central Bank of Oakland, Coit Investment Company, and C. H. Crocker will be hereinafter called Bank, Coit Co. and Crocker.

Omitting dates for the moment, Coit Co. borrowed $100,000 from the Bank to which it gave its promissory note secured by a deed of trust on land in Alameda County, and some time thereafter Coit Co. deeded this real property to Crocker, the deed providing that Crocker assumed payment of the note. Coit Co. fell behind in the interest payment and Crocker made some, the Bank having learned of the Crocker debt assumption

clause in the deed. The note having become overdue the Bank recorded notice of breach and election to sell, sold the property, which it took in for $75,000, brought the instant action against Crocker for deficiency, and secured judgment for some thirty odd thousand dollars; Crocker appealed. After recordation of notice of breach and election to sell, and before suit was brought, Coit Co. for a consideration released Crocker from his agreement with it to assume payment of the debt. As disclosed by the opening statement of counsel for the plaintiff Bank (Rep. Trans., p. 2, 1. 23, and p. 3, 1. 4), it took the position that the grantee Crocker's assumption of the payment of the debt was an offer to pay the Bank, which offer the Bank had accepted, and that hence it was suing under the provisions of section 1559 of the Civil Code as a third person for whose benefit the contract had been made—and before the rescission thereof by the immediate parties to the assumption agreement. Defendant Crocker's position was that there never had been an acceptance of his offer by the Bank, and that before any steps had been taken by the Bank to enforce the agreement, Coit Co. and he had rescinded the same. On appeal, the respondent Bank would have its judgment sustained upon the additional ground that when Crocker assumed payment of the debt he indemnified the Bank by reason of section 2777 of the Civil Code.

To this phase of the case we shall give later attention. ■ Since the appellant and respondent are in accord that the assumption of payment of the debt by the grantee of the mortgagor (trustor) is but an offer which may be rescinded at any time before acceptance by the mortgagee for whose benefit the same is made, it is unnecessary to analyze all of the authorities which illustrate the application of that doctrine which finds expression in *More* v. *Hutchinson*, 187 Cal. 623 [203 Pac. 97] : ''Our Civil Code (section 1559) expressly provides that 'a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it'. A contract for the benefit of a third person, however, like any other contract, requires an acceptance; and until such acceptance is manifested in some manner no rights creating a corresponding liability in favor of such party can arise. Until then the transaction amounts to a mere offer.'' ■ Appellant Crocker takes the position that the only manner in which a third party may accept an

562

offer in contemplation of this code section is by instituting suit to enforce the debt assumption agreement before rescission thereof. Respondent Bank contends, and its authority therefor is the case just adverted to, that acceptance may be manifested in some manner other than by institution of an action, and further that the Bank had before the institution of this action so accepted the Crocker offer as to crystallize the latter's duty to pay the debt and consequently the deficiency remaining after the sale. The Bank contends that not only did it "look to" Crocker to pay and had accepted his offer, but that if it were deprived of the right to hold him an equitable fraud would be committed upon it. The chronology of events follows: June 9, 1928, note and deed of trust (1 year maturity), executed by Coit Co. to Bank; June 9, 1929, loan matured; November 12, 1931, Coit Co., in consideration of ten dollars, deeded to Crocker, the deed containing this language: "Subject to a first loan . . . which the party of the second part herein assumes and agrees to pay;" the Bank declared that default had been made, and on February 8, 1933, recorded the notice of breach and election to sell; June 9, 1933, the statute of limitations barred action by Bank for deficiency against the maker Coit Co.; June 15, 1933, trustees sold the property under trust deed; June 28, 1933, Coit Co. released Crocker from his obligation and agreement to assume and pay it; July 21, 1933, suit was filed by the Bank for alleged deficiency against Crocker, the debt assuming grantee. If in this situation the release of Crocker by Coit Co. was adapted to accomplish its purpose, and there is no other acceptance by the Bank of the Crocker offer to pay, than by the filing of the instant action, it stands to reason that the Bank's action was tardily filed, because meanwhile Coit Co. and Crocker had rescinded the debt assumption agreement. If, however, intermediate the acquisition of knowledge by the Bank of the Crocker offer and the release of Crocker by Coit Co., either the Bank had accepted the Crocker offer or that had occurred which would make it inequitable as to the Bank that Crocker be re-released, then the suit was not tardily instituted.

The crux of the case lies in the answer to the question: Does the evidence support the finding (XII, Clerk's Trans., pp. 42 and 43) " . . . that it is a fact that prior to June 28, 1933, the defendant had dealt with plaintiff respecting the

obligation referred to in paragraphs II, III and XI hereof, and had agreed to execute a new note and deed of trust, in renewal of said obligation, and that it is a fact that prior to said June 28, 1933, plaintiff had accepted defendant's obligation to assume said note and deed of trust and had relied on defendant to pay and discharge the same''. If this question may be answered in the affirmative, the second question ''Is the document of June 28th, 1933, whereby Coit Co. agreed for a consideration to release Crocker from the agreement contained in the deed namely that he assumed payment of the obligation to the Bank, good and binding inter sese'' becomes unimportant.

Appellant contends that the trial court erred in finding that there was no rescission between him and Coit Co. of the debt assumption agreement. However, as has been suggested, if before the execution of the agreement the Bank had accepted Crocker as its debtor, Coit Co. could not release Crocker to the detriment of the Bank.

At the trial Mr. Crellin, executive vice-president of the Bank (Rep. Trans., p. 49, ll. 10–20, and Rep. Trans., p. 52, ll. 16–19), testified that he relied upon Crocker to pay the loan: ''Q. Mr. Crellin, did you look to Mr. Crocker to pay this indebtedness due on the Coit loan? A. The Bank did, yes.'' This answer by the Bank executive is perhaps a statement of the legal effect of the intercourse consisting of conversations and correspondence between Crocker and the Bank touching the matter of the payment of the loan, and the sale of the land; therefore, if his conclusion is not borne out by that which occurred it must be ignored.

We come now to the evidence: November 15, 1932 (Rep. Trans., p. 15, ll. 1 to 8), the Bank wrote to Crocker: ''The loan carried by this Bank covering property situated at the northwest corner of 15th and Madison Streets, this city, will outlaw in May of next year. As we do not allow our loans to go within six months of the outlaw date, please call at your earliest convenience regarding this matter.'' Crocker called at the Bank. January 19, 1933, the Bank again wrote Crocker (Rep. Trans., p. 15, l. 24, p. 16, l. 7): ''On your visit to us in November in relation to your loan at 15th and Madison Streets, this city, you stated that you would give us your answer by January 15th of this year as to our proceeding with the renewal of the loan or what you were going

to do with the same. Will you kindly advise us now as to what your intentions are in this regard. We thank you for a prompt reply." Crocker replied January 20, 1933 (Rep. Trans., p. 18, ll. 11–25) : "Referring to your letter of the 19th inst. regarding the loan on the Commodore Apartments, Number BR 867, would state that I am not unmindful of the fact that I promised to see you by January 15th. The deal which I had on at that time when I talked to you in November was never concluded but I have another deal on which will probably be decided within the next week one way or another. As soon as same is definitely settled I will make a point of coming in to see you regarding same. Begging your indulgence for the delay I remain Very sincerely yours, C. H. Crocker." February 4, 1933, Bank wrote Crocker (Rep. Trans., p. 17, ll. 2–9) : "With reference to that certain note for $100,000 of the Coit Investment Company, a corporation, dated June 9, 1928, payable to Central Savings Bank which said note is secured by a deed of trust of even date therewith, you are notified that notice of breach and election to foreclose according to the terms of the said deed of trust will be filed on Monday, February 6, 1933." Persons admittedly Crocker's agents, late in February, 1933, or early in March, 1933, visited Mr. Crellin of the Bank and were told by him that the Bank required that Crocker and his wife join in executing papers for a new loan. (Rep. Trans., p. 50, ll. 23–24). On March 24, 1933, Crocker's agent wrote the Bank (Rep. Trans., p. 19, l. 20, to p. 20, l. 11) : "Several weeks ago we conferred with you concerning the renewal of a loan secured by a deed of trust on the Commodore Apartments in Oakland in the amount of $100,000. At that time we did not have authority from Mrs. Crocker to comply with your request requiring her signature in addition to Mr. Crocker's signature for the reason that she was not on the original loan. Mr. and Mrs. Crocker have been in the southern part of the state for a considerable time and after communicating the situation to them, both Mr. and Mrs. Crocker have authorized us to comply with your request and they are now ready to execute the necessary renewal papers jointly. Will you kindly forward forms to us in order that we may send the same to Southern California for signature. Very truly yours, Chas. Schlessinger." May 6, 1933, Bank wrote Crocker (Rep. Trans., p. 28, ll. 11–23) : "We have a letter dated May 4 from your office

signed by Mr. Chas. Schlessinger stating that a sale of the property which secures our above mentioned loan is being consummated. This letter is to notify you that we have recalled the renewal papers which were sent to the Crocker First National Bank for the signatures of Mrs. Crocker and yourself. Foreclosure of the deed of trust securing our loan is proceeding. We hope you will arrange before the completion of the foreclosure to pay the above-mentioned note in full, which was assumed by you at the time you acquired the property.'' If there was an acceptance of the Crocker offer, or if in the intercourse of the parties, Crocker and the Bank, anything occurred which estops Crocker to stand upon the Coit release, it must be found in that which is hereinabove set forth.

If it may be said that reasonable minds might draw contrary inferences from the above evidence, one, that the Bank had accepted the Crocker offer, and the other, that the Bank had not accepted the Crocker offer, the conclusion reached by the trial court that the Bank did accept it cannot be disturbed on appeal. We conclude that the most that may be said of the evidence is the foregoing; and that it does justify the inference embodied in the finding above referred to, that the Bank had accepted the Crocker offer. It is true that there is authority to the point that the mere acceptance of an interest payment on the debt does not constitute an acceptance of the offer to pay the debt. (41 C. J., p. 49; *Drollinger* v. *Carson*, 97 Kan. 502 [155 Pac. 923].) On the other hand, it has been held that the receipt of payment of principal and interest constitutes acceptance. (41 Cor. Jur. 727, sec. 772; *Smith* v. *Kibbe*, 104 Kan. 159 [178 Pac. 427, 5 A. L. R. 483].) Under the circumstances at bar the payment of interest cannot be regarded as an isolated fact, but must be considered with the other facts developed, among which is Crocker's request for time that he might pay the principal.

◼ Appellant assigns as error the insufficiency of the complaint in that it is not alleged therein that the debt assumption agreement contained in the deed was not rescinded. This point is not well taken in view of the holding in *Stanton* v. *Santa Ana Sugar Co.*, in 84 Cal. App. 206 [257 Pac. 907], which decides that this is matter of defense. Furthermore, the allegations of the complaint are substantially the same

as those in the case of *Mortgage Guarantee Co.* v. *Motors Acceptance Corporation*, 8 Cal. (2d) 40 [63 Pac. (2d) 823], wherein it is held that the complaint is sufficient.

■ Error is assigned in the refusal of the trial court to permit oral evidence going to the circumstances under which the grant from Coit Co. to Crocker was made, with the view of showing that it was not intended that there be a debt assumption clause, and that Crocker was not aware at the time of accepting the deed of its presence therein. To this there is a double answer: First, that there is no pleading of mutual mistake, and second, that Crocker is estopped to question the validity of the contract contained in the deed because with full knowledge of its existence he dealt with the Bank. (*Harris* v. *Whittier Building & Loan Association, ante*, p. 260 [63 Pac. (2d) 840].)

We come now to the proposition urged by respondents to sustain the judgment that the same is proper by virtue of the provisions of section 2777 of the Civil Code, which provides: "One who indemnifies another against an act to be done by the latter, is liable jointly with the person indemnified, and separately, to every person injured by such act." Coit Co. was not a party to this action and the case was not tried upon the theory that Crocker had become a principal debtor and Coit Co. his surety. Since the judgment is amply supported by reason of the views hereinabove expressed, it is unnecessary to the decision of this case that this theory of liability be discussed. Appellant herein has been referred to as "Crocker"; by reason of his death May 6, 1935, Wells Fargo Bank & Union Trust Company, a corporation, as the executor of his will, was substituted as party defendant; hence, since then the case has gone forward under the name of that corporation as defendant and appellant. The judgment should be and therefore is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 18, 1937. An application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 18, 1937, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied. We are not willing to give our approval to the statement in the opinion that the assumption of the encumbrance of the lien by the purchaser of the encumbered property is an offer to the mortgagee which becomes in all events binding upon the purchaser when accepted by the mortgagee. We base our order denying a hearing upon the finding that there had been no rescission by the purchaser of his agreement to assume and pay the lien against the property purchased.